JOHN V. FARWELL *et al.*

*v.*

GERHARD BECKER *et al.*

*Filed at Ottawa June 15, 1889.*

1. APPEAL—*as to the amount involved—decree against two severally—against one for over $1000, and against the other for a sum less than $1000.* On bill against two defendants for contribution, the trial court found both defendants liable, one in a sum exceeding $1000, the other in a sum less than $1000. On appeal the Appellate Court reversed the decree as to both defendants, and the complainant appealed from that judgment to this court: *Held,* that this court had no jurisdiction of the appeal as to the defendant who was decreed to pay less than $1000.

2. Where the amount of a decree against each of two defendants is separate and distinct, the one not being liable for the amount the other is required to pay, the two amounts can not be united so as to confer jurisdiction on this court of an appeal from the Appellate Court, but each must be treated as a separate suit.

3. CONTRIBUTION—*among wrongdoers or trespassers.* The rule that there can be no contribution among wrongdoers or trespassers, applies only to cases where there has been an intentional violation of the law, or where the wrongdoer is presumed to have known that the act was unlawful.

4. SAME—*as between several attaching creditors.* Where several attaching creditors, at the time of suing out their writs, act in good faith, exercising such prudence and caution as an ordinarily prudent person would, with no intention of committing a trespass or injuring any one, but with the honest belief that a transfer of goods made by their debtor is fraudulent as to creditors, the right of contribution will exist as between the attaching creditors, although it may turn out that the seizure of the goods was unlawful, and each will be compelled to pay his just proportion of a recovery to one of them who pays the judgment and costs.

5. SAME—*payment by one of several—should hold the title to the judgment—if assigned—in order to compel contribution.* Where a defendant in a judgment against several, on payment of the same, takes an assignment of the judgment to his attorney for the purpose of keeping it alive against his co-defendants, the court, in decreeing contribution, should require the complainant to procure an assignment of the judgment from his attorney, and file the same with the decree, as a condition precedent to the issuing of an execution on the decree.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill in equity, brought by John V. Farwell and others, in the firm name of John V. Farwell & Co., against Gerhard Becker and Elbert W. Shirk, to compel contribution in respect to certain judgments rendered in the State of Iowa.

The facts disclosed by the record, so far as they are material, are briefly as follows: For some time prior to December 19, 1881, the firm of Olquist Bros. was carrying on the mercantile business at Monticello, Jones county, Iowa, and at Center Point, Linn county, Iowa, they having a stock of goods at each place. On the day above mentioned, they were indebted to various parties for merchandise, viz., $5984.23 to complainants, $2076.14 to Gerhard Becker, $234.10 to Sherer, Shirk & Co., $728 to H. L. Eisen & Co., and $1184.50 to O. R. Keith & Co. A few days prior to the date above named, Olquist Bros. sold and delivered their stock of goods at Monticello to one N. A. Sunberg, and also their stock of goods at

·Center Point to said Sunberg and one F. B. Olquist, the latter being a brother of the members of said firm, but not connected with them in the business. The evidence tends to show that the former of these sales was by way of payment and satisfaction of a chattel mortgage on said stock of goods, previously ·executed by Olquist Bros. to Sunberg. On said 19th day of December, 1881, said creditors commenced suits by attachment, in the district court of Jones county, Iowa, against Olquist Bros., for the recovery of their respective debts, and ·caused writs of attachment to be issued to the sheriffs of both ·of said counties. Said writs were levied upon both of said ·stocks of goods, the stock of goods in Jones county being at the time in the actual and visible possession of Sunberg, and the one in Linn county in that of Sunberg and Olquist, the ·purchasers from Olquist Bros. Said levies were made in the following order of priority: In Jones county, first, the complainants; second, Sherer, Shirk & Co.; third, H. L. Eisen & Co.; fourth, O. R. Keith & Co.; and fifth, defendant Becker; .and in Linn county, first, the complainants; second, defendant Becker; third, Sherer, Shirk & Co.; fourth, H. L. Eisen .& Co.; and fifth, O. R. Keith & Co. By the laws of Iowa, attachment creditors take priority in the order in which their writs of attachment are served. The suit in favor of the ·complainants, and the one in favor of defendant Becker, were commenced and prosecuted to their final termination by the ·same attorneys. The several attachment suits were prosecuted ·to judgment, and the court having appointed a receiver to take ·charge of and sell the goods attached, the goods in Jones county were sold, and the sum of $4380.14 realized therefrom, ·which sum was all paid over to the complainants in part sat- ·isfaction of their claim. The goods in Linn county were also sold, and the proceeds were applied, first, to the satisfaction of the residue of the complainants' claim, after which the claim ·of Becker was paid in full; then that of Sherer, Shirk & Co., ·leaving $55.55, which was applied upon the claim of H. L.

Eisen & Co. The residue of that claim, as well as the entire claim of O. R. Keith & Co., remained unsatisfied.

On the 27th day of December, 1881, Sunberg, claiming to be the owner of the stock of goods attached in Jones county, commenced his action in the district court of that county, against the sheriff, to recover damages for the wrongful seizure of said goods. At about the same time, a similar action was commenced by Sunberg and F. B. Olquist, against the sheriff of Linn county, in the district court of that county. Afterward, in pursuance of the provisions of a certain statute of Iowa, the complainants were substituted as defendants, in place of the sheriff, in the action pending in Jones county, and in the action pending in Linn county, the complainants, defendant Becker, and Sherer, Shirk & Co., were substituted as defendants, in place of the sheriff of that county. Such substitution having been made, both suits were removed to the Circuit Court of the United States. A motion in that court to remand said causes to the State courts was granted, but on petition for a rehearing the order remanding said causes was vacated and the consideration of the motion postponed, to await the decision of an appeal to the Supreme Court of Iowa, from the order of the district court making a substitution of defendants. An appeal was prosecuted by Sunberg in the Jones county case, and upon such appeal the Supreme Court decided that the statute under which the substitution was made was unconstitutional, and reversed the order discharging the sheriff and substituting the complainants as defendants in his stead. Both of said causes were thereupon remanded to the State courts. Notwithstanding such decision, the parties substituted as defendants voluntarily elected to continue as such, and the Jones county suit was thereafter prosecuted against the complainants and the sheriff jointly, and the Linn county case against the complainants,—defendant Becker and the sheriff of that county not being restored as defendants. Shortly after the causes were remanded, a stipulation entitled

in both suits, and signed by attorneys representing all the parties plaintiff and defendant therein, was filed in the suit in Jones county, which, among other things, provided that if judgment should be rendered for the plaintiff on a trial in Jones county, a judgment should also be rendered in favor of plaintiff in Linn county. A trial was afterwards had in the Jones county case, before the court and a jury, resulting in a verdict in favor of plaintiff, for $8015. On appeal to the Supreme Court of Iowa, the judgment was affirmed. The stipulation was thereupon filed in Linn county, and, in pursuance of its terms, a judgment was entered in the cause pending in that county, in favor of plaintiff, for $7541.18.

The evidence shows that the defendant Becker was fully informed, from time to time, by the attorneys defending said suits, of the pendency of the suits, and of the various proceedings therein, and that no objection was made by him to any of said proceedings. It also appears that he contributed, from time to time, various sums of money to defray the expenses of both suits in the district courts, as well as of the appeal from the judgment rendered in Jones county to the Supreme Court of Iowa. After the last mentioned judgment had been affirmed by the Supreme Court, and a few days before the entry of the judgment in Linn county, one of the attorneys for the plaintiffs in said suits called on the complainants in Chicago, and demanded of them immediate payment of both the Jones county judgment and the claim upon which they were entitled, by stipulation, to judgment in the Linn county suit, threatening, if such payment was not instantly made, to proceed, without any delay, in the matter of both judgments, by way of levying on the complainants' property and garnishing their debtors in Iowa. The complainants, after endeavoring in vain to obtain sufficient delay to enable them to obtain contribution from their co-defendants, gave to said attorney their checks for the full amount of both judgments. At the same time, a computation of the amount of the Linn county judg-

ment, as the same was to be entered · by stipulation, having been made, a further stipulation was drawn up and signed by said attorney, and one of the attorneys for the defendants in said suits who was also present, to the effect that judgment should be entered in Linn county for said sum of $7341.18. The complainants also at the same time gave to said attorney, for the defendants, their check for the residue of attorneys' fees and other expenses in the matter of said suits, the total sum so paid by the complainants in the matter of said judgments, costs, fees and expenses being $18,736.99. The complainants, however, instead of having said judgments satisfied and discharged of record, procured an assignment thereof to H. S. Parkhurst, one of their attorneys, for the avowed purpose of keeping them alive, in order to enforce contribution from their co-defendants. Said judgments, so far as appears, are still held by said Parkhurst under said assignment.

The circuit court found that defendants Becker and Shirk, the latter being a member of the firm of Sherer, Shirk & Co., were each liable to contribute in respect to the full amount of said judgment and expenses, such contribution to be made in proportion to the respective amounts collected by the complainants, said Becker and the firm of Sherer, Shirk & Co., by means of said attachment suits. It was accordingly decreed that said Becker should pay to the complainants the sum of $5047.75, and said Shirk the sum of $554.75.

Messrs. TENNEY, BASHFORD & TENNEY, for the appellants:

A court of equity has jurisdiction to enforce contribution. 1 Story's Eq. Jur. secs. 492, 496; *Conover* v. *Hill,* 76 Ill. 342; *Johnson* v. *Vaughn,* 65 id. 425; *Wincock* v. *Turpin,* 96 id. 135; *Buchanan* v. *Meisser,* 105 id. 638; *Pixley* v. *Gould,* 13 Bradw. 565; *Cary* v. *Holmes,* 16 Gray, 127; *Whitman* v. *Porter,* 107 Mass. 522; *Nickerson* v. *Wheeler,* 108 id. 295; *Whitcomb* v. *Converse,* 119 id. 38.

The rule that contribution will not be enforced between trespassers or wrongdoers, is confined to cases where the person seeking redress must be presumed to have known that the act for which he has been mulcted in damages was unlawful. Cooley on Torts, 147; *Jacobs* v. *Pollard,* 10 Cush. 287; *Stanton* v. *McMullen,* 7 Bradw. 326; *Humphreys* v. *Pratt,* 5 Bligh, 154; *Coventry* v. *Barton,* 17 Johns. 142; *Leggett* v. *DuBois,* 5 Paige's Ch. 468; *Harbach* v. *Elder,* 18 Pa. St. 33; *Moore* v. *Appleton,* 26 Ala. 633; *Dugdale* v. *Lovering,* 12 Moak's Eng. Rep. 316, note; *Bully* v. *Batty,* 12 E. C. L. 649; 1 Parsons on Contracts, 37; 1 Hilliard on Torts, 188, note a; 1 Waterman on Trespass, secs. 29, 31.

The decree from which this appeal is prosecuted is not the decree of the circuit court, but that of the Appellate Court, which reverses with direction to dismiss as to both defendants. It is not in favor of Shirk severally, but in favor of him and Becker. One entire decree was rendered disposing of the whole controversy in favor of appellees jointly, and this appeal is from this decree,—not from a part of it.

Each of the defendants was a necessary party to the bill, and each was interested in the amount the other was to pay, as it affected the amount of his own contribution. Separate bills could not have been maintained.

This court has jurisdiction because the aggregate amount involved in the suit, and in which both defendants have a common interest, exceeds $1000. *The Connemara,* 103 U. S. 754; *The Mamie,* 105 id. 773; *Shields* v. *Thomas,* 17 How. 3.

Messrs. BECK & CHARLTON, and Mr. JOHN GIBBONS, for the appellee Becker:

If a plaintiff recovers in tort against two defendants, and levies the whole damages on one, that one can not recover a moiety against the other. *Merryweather* v. *Nixon,* 8 D. & E. 186; *Nelson* v. *Cook,* 17 Ill. 443; *Nichols* v. *Nowling,* 82 Ind. 483; *Miniers* v. *Johnson,* 1 Duv. 171; *Peck* v. *Ellis,* 2 Johns.

Ch. 131; *Acheson* v. *Miller*, 18 Ohio, 1; *Anderson* v. *Saylors*, 3 Head, 551; *Rhea* v. *White*, id. 120; *Baird* v. *Steel Works*, 12 Phil. 255; *Hen* v. *Barber*, 2 Mack. 545; Cooley on Torts, 149, 150.

Mr. FREDERICK ULLMAN, for the appellee Shirk:

The amount involved being less than $1000, this court has no jurisdiction. *Paving Co.* v. *Mulford*, 100 U. S. 147; *Rich* v. *Lambert*, 12 How. 347; *Seaver* v. *Bigelow*, 5 Wall. 208; *Oliver* v. *Alexander*, 6 Pet. 143; *Stratton* v. *Jarvis*, 8 id. 41; *Spear* v. *Place*, 11 How. 525.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The appellee Elbert W. Shirk has entered a motion to dismiss the appeal, so far as he is concerned, on the ground that the amount involved is less than $1000 and the judgment of the Appellate Court is final.

The bill in this case was brought against two defendants—Becker and Shirk. The facts set out in the bill, briefly stated, are, that Farwell & Co., Becker, Shirk's firm (Sherer, Shirk & Co.) and Eisen & Co. were creditors of Olquist Bros., a firm doing business at Monticello and Center Point, Iowa. The firm became insolvent, and made transfers of their stock, which the creditors claimed were fraudulent, and thereupon brought attachment suits through the same attorneys. The goods were sold under the attachment proceedings, and enough was realized to pay the claims of Farwell, Becker and Shirk in full. Trespass suits were brought by the parties who purchased the goods from Olquist Bros., against the sheriffs who made the levies, for the value of the goods, and, after considerable litigation in Iowa, judgments were recovered by the plaintiffs in both of the suits, which judgments were paid by Farwell & Co. They also paid the costs and expenses of defending the suits, and brought this bill to compel Becker and Shirk to contribute *pro rata* to the payment of the amount they had paid out. The

circuit court entered a money decree, requiring Becker to pay complainants $5047.75, and requiring Shirk to pay $554.74. To reverse the decree, each defendant took a separate appeal to the Appellate Court. The Appellate Court reversed the decree as to both defendants, and remanded the cause, with directions to dismiss the bill. To reverse that judgment, complainants appeal to this court.

We think it is plain that this court has no jurisdiction so far as the defendant Shirk is concerned. Although two parties (Becker and Shirk) were made defendants to the bill, the action is against each defendant to enforce a separate and distinct liability. The claim relied upon was separate as to each defendant, and so was the recovery. Shirk was in no manner connected with Becker as to the claim against him, nor was Becker in any manner liable as respects the claim against Shirk. Where the amount against each defendant is separate and distinct, as is the case here, the two amounts can not be united so as to confer jurisdiction, but each must be treated as a separate suit; and if the amount involved as to either one is not large enough to confer jurisdiction, the appeal must fall. See *Paving Co.* v. *Milford,* 100 U. S. 147.

The appeal, as to appellee Shirk, will be dismissed.

Several questions have been discussed by counsel, in the argument, but there is but one question of any importance presented by the record, and that is, whether complainants in the original bill (appellants here) have the right to require Gerhard Becker to contribute to the payment of the judgments rendered in the district courts of Jones and Linn counties, Iowa, and costs, which the complainants had paid, in consequence of the levy on the goods as the property of Olquist Bros.

It is insisted by appellee, that in the attachment and sale of the goods in Iowa, the complainants, and Gerhard Becker, the defendant, were all wrongdoers, and that no right of contribution exists between wrongdoers. There are cases which

hold that no right of contribution exists between wrongdoers. *Merryweather* v. *Nixon*, 8 Durn. & East, 186, may be regarded as a leading case on the subject. *Nicholas* v. *Newling*, 82 Ind. 448, *Peck* v. *Ellis*, 2 Johns. Ch. 131, *Cranston* v. *Limbet*, 18 Ohio, 81, and *Spalding* v. *Oakes*, 42 Vt. 343, hold the same doctrine. There are other cases where the same rule has been declared, but we do not think the weight of authority sustains the doctrine that no right of contribution exists between wrongdoers as it is broadly stated in *Merryweather* v. *Nixon*. Indeed, the later English cases do not, in our opinion, sustain the doctrine as it is laid down in that case. The question arose in *Adamson* v. *Bidgood*, 4 Bing. 66, and in passing upon the question, among other things, BEST, C. J., said: "It was certainly decided in *Merryweather* v. *Nixon* that one wrongdoer could not sue another for contribution. Lord KENYON, however, said that the decision would not affect cases of indemnity, where one man employed another to do acts not unlawful in themselves, for the purpose of asserting a right. This is the only decided case on the subject that is intelligible. The case of *Phillips* v. *Biggs*, Hasdr. 164, was never decided, but the court of chancery seemed to consider the case of two sheriffs of Middlesex, where one had paid the damages in an action for an escape, and sued the other for contribution, as like the case of two joint obligors. From the inclination of the court in the last case, and from the concluding part of Lord KENYON's judgment in *Merryweather* v. *Nixon*, and from reason, justice and sound policy, the rule that wrongdoers can not have redress or contribution against each other, is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act." What was said in the case cited was approved in a later case—*Betts* v. *Gibbons*, 2 Ad. & Ell. 57. See, also, *Nooley* v. *Batte*, 2 Car. & Payne, 417.

Story on Partnership, (sec. 220,) after stating what is regarded as the general rule,—that no right of contribution is allowed, by the common law, between joint wrongdoers,—says:

"But the rule is to be understood according to its true sense and meaning, which is, where the tort is a known, meditated wrong, and not where the party is acting under the supposition of the entire innocence and propriety of the act, and the tort is merely one of construction or inference of law."

*Armstrong Co.* v. *Clanen Co.* 66 Pa. St. 218, sanctions the rule announced in Story, and after reviewing the authorities on the question, holds that where the tort is a known, meditated wrong, contribution can not be had, but where the party is acting under the supposition of the entire innocence and propriety of the act, contribution may be awarded.

In *Bailey* v. *Busing*, 28 Conn. 455,—a leading case on the subject,—it was held: "The rule that there can be no contribution among wrongdoers has so many exceptions that it can hardly, with propriety, be called a general rule. It applies properly only to cases where there has been an intentional violation of the law, or where the wrongdoer is presumed to have known that the act was unlawful."

In *Jacobs* v. *Pollard*, 10 Cush. 287, the Supreme Court of Massachusetts state the law as follows: "No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act, by seeking an indemnity or contribution from those with whom, or by whose authority, such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require that it should not be extended to cases where parties have acted in good faith, without any unlawful design, or for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third persons. It is only where a person knows, or must be presumed to know, that his acts were unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a willful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases."

*Acheson* v. *Miller*, 2 Ohio St. 203, is a case in its facts quite similar to the present case. In the discussion on the right of contribution, the Supreme Court of Ohio said: "The rule that no contribution lies between trespassers, we apprehend is one not of universal application. We suppose it only applies to cases where the persons have engaged together in doing, wantonly or knowingly, a wrong. The case may happen that persons may join in performing an act which to them appears to be right and lawful, but which may turn out to be an injury to the rights of some third party, who may have a right to an action of tort against them. In such case, if one of the parties who has done the act has been compelled to pay the amount of the damages, is it not reasonable that those who were engaged with him in doing the injury should pay their proportion?" After reviewing the authorities, the court holds that the legal rule is, that when parties think they are doing a legal and proper act, contribution will be had, but when the parties are conscious of doing a wrong, courts will not interfere. See, also, *Coventry* v. *Barton*, 17 Johns. 141.

Under the authorities, we think it is clear that if the attaching creditors, at the time they sued out their attachments and seized the goods, acted in good faith, exercising such prudence and caution as an ordinarily prudent person would exercise, with no intention of committing a trespass or injuring any one, but with the honest belief that the transfers made by Olquist Bros. were fraudulent as to creditors, the right of contribution exists, although it ultimately turned out that the seizure of the goods was unlawful and unwarranted. The facts surrounding the transaction at the time the levy was made, were such, in our opinion, as to lead any prudent person to believe that the goods were liable to be attached by creditors, as was done. Olquist Bros. were, at the time of the pretended sale, largely indebted to various parties. A day or two before the attachments issued, they claimed to have sold the Monticello store to N. A. Sunberg, and the other stock to N. A. Sun-

berg, and F. B. Olquist, another brother. No effort was made to adjust or pay their liabilities. They retained no other property liable to levy or sale. These and other kindred facts were brought to the attention of the attaching creditors before they proceeded to seize the goods. If the sales were fraudulent, although the possession of the goods was turned over to the purchasers, the creditors had the right to levy. Were not the facts surrounding the transaction such that a reasonably prudent person might well believe that an attempt had been made to defraud creditors? If so, it can not be said that the attaching creditors, in making the levy, intentionally violated the law. Nor were they presumed to have known that the levy was unlawful. The fact that the goods, when attached, were in the possession of Sunberg, is not a controlling fact. The surrounding circumstances indicated that the pretended sale was fraudulent, and if fraudulent, as it appeared to be, the creditors had a right to attach the goods, although in possession of a pretended purchaser, and a seizure, under such circumstances, can not be regarded as tortious.

As to the equities of the case, they are with the complainants. The defendant, as well as complainants, sued out attachments, which were levied on the goods. He assisted in defending the actions brought by the claimant of the goods. His debt was fully paid from money arising out of a sale of the goods under the attachment, and as the complainants have been compelled to refund the value of the goods, equity and fair dealing unite in requiring the defendant to contribute his just proportion of the burden which has been cast upon the complainants on account of the seizure and sale of the goods. We think the decree of the circuit court holding Becker liable to contribute was correct.

One other fact remains to be noticed. It appears from the evidence, that the complainants, when they paid the two judgments rendered against them for taking the goods, did not have the judgments receipted and cancelled, but they were

18—129 ILL.

assigned to Parkhurst, who was an attorney of complainants. The decree treats the judgments as belonging to complainants, which is the fact; but as they were assigned to Parkhurst, we think the decree should be modified, requiring complainants to procure an assignment of the judgments from Parkhurst, and file the same with the decree, as a condition precedent to the issuing of an execution to collect the amount found due by the decree. In this respect the decree of the circuit court will be modified. In all other respects it will be affirmed.

The judgment of the Appellate Court, as to defendant Becker, will be reversed.

*Judgment reversed.*

Mr. Justice Bailey, having heard this case in the Appellate Court, took no part in its decision here.