## John Griffiths & Son Company, Appellee, v. National Fire Proofing Company, Appellant.

### Gen. No. 27,688.

INDEMNITY—*validity of contract to indemnify building contractor for loss by injury to third person from tort of subcontractor.* A contract under which a building subcontractor agreed to hold the principal contractor harmless "from all loss, cost or expense arising from any and every accident happening to any person whomsoever and occasioned directly or indirectly by the operations" of the subcontractor is not unenforceable by the principal contractor in an action to recover from the subcontractor the amount of damages awarded against the contractor in an action for personal injuries suffered by a person who was struck by tile which fell from a scaffold constructed by the subcontractor in violation of the provisions of a penal safety statute relative to the construction of scaffolds on buildings under construction, where, although the contractor had been guilty of a violation of the statute in failing to properly inspect the scaffold, the accident resulted from the improper manner of its construction, since the enforcement of such contract is not against public policy where the parties are not *in pari delicto.*

TAYLOR, J., dissenting.

Appeal by defendant from the Municipal Court of Chicago; the Hon. HOWARD HAYES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed June 20, 1923.

JOHN T. RICHARDS, for appellant.

WINSTON, STRAWN & SHAW and JOHN CLARK BAKER, for appellee; JOHN D. BLACK and RODNEY C. GLOVER, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant, National Fire Proofing Company, seeks to reverse a judgment recovered against it by the plaintiff, John Griffiths & Son Com-

pany, in the municipal court of Chicago, for $9,921.87.

John Griffiths & Son Company had the general contract for the erection of a building in the down-town section, of the City of Chicago. The National Fire Proofing Company had a subcontract for a part of the construction work on the building. In this connection, these two companies executed a contract, by the terms of which the National Fire Proofing Company agreed to exercise due diligence in the performance of the work covered by the contract and, further, that it would hold John Griffiths & Son Company harmless "from all loss, cost or expense arising from any and every accident happening to any person whomsoever and occasioned directly or indirectly by the operations" of the said National Fire Proofing Company or any subcontractor under it. In the course of the erection of the building referred to, the National Fire Proofing Company erected certain scaffolds on which there were placed pieces of fireproof tiling, as the men were engaged in the work of construction. A piece of this tiling fell from one of these scaffolds, out through a window, striking and injuring one, Slaughter. The latter thereupon brought suit against John Griffiths & Son Company and others for damages. This suit did not involve the National Fire Proofing Company, as this company paid Slaughter $7,500, in consideration for which he executed a covenant not to bring suit against them. John Griffiths & Son Company notified the National Fire Proofing Company of the pendency of the suit Slaughter had brought against it and others and requested the National Fire Proofing Company to assume the defense of that action. This it declined to do.

In the suit brought by Slaughter against John Griffiths & Son Company and others, he charged the defendants with a violation of sections 1 and 9 of "An Act for providing for the protection and safety of

persons in and about the construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures and to provide for the enforcement thereof.'' Section 1 of the Act [Cahill's Ill. St. ch. 48, ¶ 123] provides, among other things, that all scaffolds ''shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated, as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such a manner as to prevent the falling of any material that may be used or deposited thereon.'' Section 9 of the Act [Cahill's Ill. St. ch. 48, ¶ 132] provides that: ''Any owner, contractor, subcontractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof, and any such owner, contractor, subcontractor, foreman or other person, violating any of the provisions of this Act shall, upon conviction thereof,'' be fined or imprisoned as therein provided.

In the action brought by Slaughter against the John Griffiths & Son Company, it was charged that the defendants had wilfully failed to comply with the terms of the foregoing statute and had not caused the scaffold in question to be constructed in such a manner as to prevent the falling of any material that might be used or deposited thereon, but had permitted the same to be so constructed that material could fall therefrom, in consequence of which, a piece of fireproof tiling had fallen from the scaffold and struck the plaintiff and injured him.

In the trial of that case the court instructed the jury that the plaintiff could not recover against the defendants therein named on any other ground than a violation of the statute relied upon and set forth by the plaintiff in his declaration.

The plaintiff in the case at bar, John Griffiths & Son Company, filed its statement of claim, setting forth the substance of all the foregoing facts, the judgment recovered against it, in the case referred to in the statement of those facts, and sought a judgment against the defendant, National Fire Proofing Company, under the terms of its contract with that company, for an amount sufficient to reimburse it for the loss it had suffered in the premises. After certain proceedings were had, which are not involved on this appeal, the defendant herein filed its amended affidavit of merits, setting up a number of matters which it will not be necessary to note here, and further alleging that the only issue submitted to the jury by the court in the case brought by Slaughter against John Griffiths & Son Company was a question as to whether that company (and one other, involved as a defendant at the close of the trial of that case) had violated or failed to comply with the requirements of the statute, which we have hereinbefore set forth; that by its verdict the jury to which the issues were submitted in that case found that John Griffiths & Son Company had violated or failed to comply with the requirements of the statute; that judgment was entered on that verdict by the trial court and thereafter affirmed in this court. The National Fire Proofing Company further alleged in its affidavit of merits that it is not liable in any sum to the John Griffiths & Son Company in any sum whatever, by reason of anything contained in the contract between these parties, as set forth in the plaintiff's statement of claim, or by reason of any other matter or thing therein set forth.

Thereafter, the John Griffiths & Son Company submitted its motion to the municipal court of Chicago, to strike the amended affidavit of merits, filed by the defendant National Fire Proofing Company, which motion was sustained and said amended affidavit of

merits was ordered stricken from the files and the record of the court. The defendant electing to stand upon its amended affidavit of merits, and the demand for trial by jury, which had theretofore been filed, having been withdrawn, the plaintiff submitted formal proof of its claim and the court thereupon found the issues in favor of the plaintiff, John Griffiths & Son Company, and judgment for the amount heretofore referred to was entered against the defendant, National Fire Proofing Company. To reverse that judgment the defendant has perfected this appeal.

It is the contention of the defendant, in support of its appeal, that the statute in question is a penal statute; that the first section of the statute contains specific directions as to the manner in which scaffolds shall be constructed and that the ninth section of the statute imposes upon both the plaintiff contractor and the defendant subcontractor the duty to comply with all the terms of the act and provides a penalty in case of a violation of the terms of the statute by any such contractor or subcontractor. It is the position of the defendant that it was plainly the intention of the legislature, in enacting this statute, to throw about the construction of scaffolds unusual safeguards for the protection of persons working or passing under or near them and to that end the legislature apparently sought to require that it should be the business of each party named in the statute to inspect the scaffold in order to assure its safety, and that inasmuch as it was the evident purpose of the statute in question to make it the duty of each of the parties to take care that the proper safeguards were placed upon the scaffold in question for the protection of those passing under or near the same and each was obligated to see that this provision of the statute was complied with, to allow them to enter into a contract which would relieve either of the responsibility imposed by the law would be contrary to public policy.

In our opinion, this contention is untenable. The contract on which this suit is based does not have the effect of relieving either party of the responsibility imposed by the statute. The plaintiff, John Griffiths & Son Company, has been obliged to respond in damages to the injured man, Slaughter, notwithstanding the existence of the contract. All the responsibilities and obligations of John Griffiths & Son Company, to the public, under the statute, remained the same, after the contract was entered into, as they had been previously. The contract did not even have the effect of saving the John Griffiths & Son Company harmless from all loss or expense arising from accidents occasioned by the lack of care called for on its part, by reason of the statute, but only from such loss or expense as arose from accidents occasioned "directly or indirectly by the operations of the party of the second part," the defendant National Fire Proofing Company, or by its subcontractors. Contracts of the former type have been repeatedly upheld as not against public policy. Such contracts are to be found in many of the forms of indemnifying bonds. If those contracts do not violate a sound public policy, there would seem to be no reason why the contracts of the latter type, such as the one involved here, do.

It is the general rule that the law will not enforce contribution nor indemnity as between two or more actual tortfeasors,—this on the theory that public policy demands that such wrongdoers shall be left, as to each other, where their joint offense leaves them. But as well founded as the rule itself are certain exceptions to it. Where, for example, although both of two parties have been at fault, they are not *in pari delicto,* or where they have not been in the same fault toward the injured party, and the latter has required one of the wrongdoers to pay him damages, such wrongdoer may exact contribution or indemnity from the other where the injury has been directly due to

the fault of that other. Cooley on Torts (1st ed.), pp. 145-146.

The words of the court in rendering its decision in the case of *Central of Georgia Ry. Co. v. Macon Railway & Light Co.*, 140 Ga. 309, are particularly applicable to the situation involved in the case at bar. In that case, the court said:

"While it may be true that as a general rule one of two or more joint tort-feasors has no right of action over against those connected with him in the tort, for either contribution or indemnity, where he alone has been compelled to satisfy the damages resulting from the tort, yet in some cases one who is liable as a tort-feasor because he has failed to exercise due diligence to discover a defect or danger in machinery, appliances, or place where the injured person is required to work, and has been compelled to pay damages for injuries growing out of the tort, may have a right to recover over against another whose negligence produced or brought about the defect or dangerous condition in the machinery, appliances, or place, which defect was the proximate cause of the injury. And the present case seems to us to belong to the latter class."

In most jurisdictions, municipalities are liable, by virtue of statutory enactments, for damages resulting from injuries received by individuals, because of defective bridges, highways, streets or sidewalks, and in such jurisdictions there are many cases where municipalities have been permitted to recover over against contractors or others responsible directly for the defective conditions which caused such injuries. In some instances, such recovery over has been based on the general law and in others it has been based on a contract or bond. *Hart Township v. Noret*, 191 Mich. 427; *Robertson v. City of Paducah*, 146 Ky. 188; *Village of Geneva v. Brush Electric Co.*, 3 N. Y. Supp. 595; *Lowell v. Boston & Lowell Corporation*, 40 Mass. 24; *Washington Gaslight Co. v. District of Columbia*, 161 U. S. 316; *Lexington Com'rs v. Ætna Indemnity*

*Co.,* 155 N. C. 219; *Heman Const. Co. v. City of St. Louis,* 256 Mo. 332; *Robbins v. City of Chicago,* 71 U. S. 657; *McCarthy v. City of Chicago,* 53 Ill. 38. Whether the tort-feasor who is seeking indemnity is such because of a violation of the substantive law or by reason of some statute makes no difference as to his right to claim indemnity. "In either case, the plaintiff is held liable by inference of law and not by reason of his active participation in the act which occasioned the injury." *Gray v. Boston Gaslight Co.,* 114 Mass. 149.

In the case at bar, both the plaintiff and the defendant are made liable under the statute for the damages suffered by Slaughter as a result of his injuries. The plaintiff is liable although it did not construct the scaffold and had no direct connection with it, because of its neglect in failing to inspect it and see that its arrangements were such that objects would not fall from it into the alley below, and the defendant, because it failed to construct the scaffold properly, the scaffold coming within its direct operations. The plaintiff is liable for an omission of the duty imposed upon it by the statute and while, in a sense, such is also the basis of the defendant's liability under the statute, it is further true that the defendant was the active perpetrator of the wrong. The parties are thus not *in pari delicto* and the right to indemnity may exist in the one whose wrong lay in an act of omission only and not also in an act of commission, which was the direct or efficient cause of the injuries involved, and a contract providing for such indemnity may not be said to be against a sound public policy. *Otis Elevator Co. v. Cameron* (Tex. Civ. App.), 205 S. W. 852; *Pfarr v. Standard Oil Co.,* 165 Iowa 657.

In *Kansas City, M. & B. R. Co. v. Southern Ry. News Co.,* 151 Mo. 373, 52 S. W. 205, the contention was made that a contract, similar to the one involved

here, except that a statute was not there involved, was void. It was there argued, as it is here, that such a contract was against public policy and also that to permit such a contract to be enforced would have a tendency to reduce the vigilance which the law sought to exact from the party seeking indemnity. In that case the court referred to *American Casualty Ins. Co.'s Case* (*Boston & Al. R. Co. v. Mercantile Trust & Deposit Co.*), 82 Md. 535, 34 Atl. 778; *Trenton Pass. Ry. Co. v. Guarantors' Liability Indemnity Co.*, 60 N. J. L. 246, and said, quoting from *American Casualty Ins. Co.'s Case:*

"Neither in express terms nor by implication do they (policies of indemnity insurance) profess or purport to abridge in any way the carrier's common-law liability for injuries to passengers, employees or strangers. These policies leave that liability precisely where and as complete as it was before they were written. They contain no provision impugning or questioning in the slightest degree the full measure of that responsibility  *  *  *  but they are all, it is alleged, repugnant to public policy because by furnishing the carrier with a fund with which to reimburse himself for losses caused by his own negligence their inevitable tendency or effect is to induce less vigilance or to promote greater carelessness on the part of the carrier. Precisely the same reasoning would invalidate, as repugnant to public policy, every species of fire and marine insurance  *  *  *  but in neither instance can it be said that, because a temptation to be negligent may possibly result from the possession of an insurance policy, the contract of insurance necessarily begets negligence or conflicts with public policy.  *  *  *  Unless it be assumed as a postulate that the mere possession of an indemnity will of itself necessarily and invariably produce negligence, it does not logically follow that such a policy or indemnity is even incidentally or indirectly repugnant to public policy. The indemnity in no way affects the liability of the carrier to the person injured."

The court then proceeded to say:

"The only distinction between those cases and the one in hand is that in those the contracts were formal contracts of insurance with insurance companies, while the contract in question is a contract of indemnity by a news company, but a mere contract of insurance is nothing more nor less than a contract of indemnity against loss as is this with the defendant, and the principles governing must be the same in each; and as nothing can be predicated of the contract in this case which could interfere with or affect the liability of the carrier to the person injured, there is nothing in it to take it out of the principle of those cases or render it obnoxious to public policy."

In the case of *Messersmith v. American Fidelity Co.,* 232 N. Y. 161, the plaintiff sued upon the defendant's policy of insurance against liability for injuries accidentally suffered by anyone through the maintenance or use of the plaintiff's automobile. The defense interposed was that, in violation of the State statute, the automobile in question had been driven by an infant under the age of eighteen years, not accompanied by either the owner or a duly licensed chauffeur; that this had been done with the plaintiff's knowledge and under his directions and that the accident involved had been directly caused by the negligence of said infant, while thus violating the law. The question thus presented was whether an indemnity under such circumstances was inconsistent with public policy. The court held that it was not.

In this connection the court pointed out that practically every violation of the highway law and the law governing the operation of automobiles was made a crime by the statutes, and yet the legislature had provided that insurance companies might indemnify against liability for loss and damages from the use and maintenance of automobiles and had thus manifested recognition and approval of the business of insuring against the consequences of negligence whether

personal or vicarious, although amounting to a misdemeanor, and that, even without the aid of legislation, courts of high authority had reached a like conclusion. The court then noted that the defendant in that case did not dispute that there might be an indemnity against negligence, but that it was argued that the liability there sought to be enforced was the product, not of negligence but of wilfulness. In continuing, the court pointed out that by intrusting his car to a youth under the age of eighteen years, the plaintiff had not desired or intended that there should be an injury to travelers; that although the plaintiff's act of so intrusting it had been wilful, the ensuing conduct of the custodian had not been wilful. The court then said: "What was wilful was not actionable except as it became so in the sequel through what was unintended or fortuitous."

What the court had to say in the case cited, is, in our opinion, applicable to the situation presented in the case at bar, where the defendant in the Slaughter case, being the plaintiff here, was charged with having wilfully failed to comply with the terms of the statute. In the case last cited, the court concluded that public policy did not forbid the enforcement of the contract there involved. We have come to a like conclusion as to the contract involved in the case at bar.

It does not affect the question that, as in the case at bar, the insurer of the indemnitor and the defendant contractor are the same. *Heman Const. Co. v. City of St. Louis*, 256 Mo. 332, 165 S. W. 1032.

For the reasons stated the judgment of the municipal court is affirmed.

*Judgment affirmed.*

O'CONNOR, J., concurs.

MR. JUSTICE TAYLOR dissenting: The defendant in its amended affidavit of merits sets up as a defense that the judgment obtained by Slaughter against John Griffiths & Son Company was by reason of a violation

598 APPELLATE COURTS OF ILLINOIS.

John Griffiths & Son Co. v. Nat. Fire Proofing Co., 229 Ill. App. 587.

by that company of the penal statute set up in the Slaughter declaration, and "that the said defendant is not by reason of anything contained in said contract set forth in said plaintiff's statement of claim" liable in any way. It also sets forth the statute, above referred to, and, also, the instruction given in the Slaughter case on behalf of John Griffith & Son Company, and alleges that the only issue submitted to the jury for decision was whether John Griffiths & Son Company had violated or failed to comply with the requirements of the statute in question. The defendant having appealed from the order striking the amended affidavit of merits, the question arises whether the defense therein set forth was well founded?

It is stated in the brief of counsel for the plaintiff, John Griffiths & Son Company, that: "On the trial of the Slaughter suit, every issue but one was eliminated and appellee (John Griffiths & Son Company) was held liable solely on the theory that it was liable for what was done by appellant (National Fire Proofing Company) which the jury held to be a' violation of section 1 of the Act requiring all scaffolds to be well and safely constructed."

The adjudication in the Slaughter suit was that the John Griffiths & Son Company was liable because of a violation of the penal statute in question. The question then arises whether under the terms of the contract of April 29, 1912—whereby the defendant, National Fire Proofing Company, agreed to exercise due diligence in the performance of the work and to hold the plaintiff, John Griffiths & Son Company, harmless "from all loss, cost or expense arising from any and every accident happening to any person whomsoever and occasioned directly or indirectly by the operations" of the defendant—the plaintiff is entitled to recover a judgment against the defendant in the sum of $9,921.87.

It is contended on behalf of the defendant that by

the Act of June 3, 1907, the legislature made it a duty of each of the parties to this suit to inspect the scaffold in question for the purpose of assuring its proper construction, and that neither could avoid its obligation to do so; that a contract or undertaking to indemnify a person against loss which such person may suffer by reason of his own violation of the law is against public policy and void.   There is no doubt but that section 9 of the Act [Cahill's Ill. St. ch. 48, ¶ 132] imposed upon both the plaintiff and the defendant a like obligation to see that the scaffold in question should be "erected and constructed in a safe, suitable and proper manner    *    *    *    so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Further, the act provides that not only must the owner, contractor or subcontractor, as well as others, comply with the terms of the act, but that any one of them violating the act shall be, upon conviction, fined or imprisoned.

It is generally true that where one of two joint tortfeasors is not *in pari delicto* with the person from whom he seeks to recover, he may obtain indemnity. *Farwell v. Becker,* 129 Ill. 261; 14 R. C. L. 52. Also, that contracts to indemnify against acts of the indemnitor are valid and binding.   So, further, an agreement to indemnify against certain acts of the indemnitee has been held to be valid. *Chicago, R. I. & P. Ry. Co. v. Hamler,* 215 Ill. 525; *Blank v. Illinois Cent. R. Co.,* 182 Ill. 332.

The exact question here involved does not seem to have been definitely decided.   Seemingly a promise of indemnity may be binding even though it may have a tendency to invite carelessness or a lack of vigilance or indifference in regard to certain normal obligations and responsibilities. In *Phœnix Ins. Co. v.*

*Erie Transp. Co.,* 117 U. S. 312, where the court was called upon to decide the legality of certain insurance which was taken out by a common carrier on goods which it carried and which might be lost by the negligence of the servants of the carrier, the court said, referring to the policies of insurance: "By obtaining insurance he does not diminish his own responsibility to the owners of the goods, but rather increases his means of meeting that responsibility." "They contain no provision impugning or questioning in the slightest degree the full measure of that responsibility * * * but they are all, it is alleged, repugnant to public policy because, by furnishing the carrier with a fund with which to reimburse himself for losses caused by his own negligence, their inevitable tendency or effect is to reduce such viligance or to promote greater carelessness on the part of the carrier. Precisely the same reasoning would invalidate, as repugnant to public policy, every species of fire and marine insurance * * * but in neither instance can it be said that because a temptation to be negligent may possibly result from the possession of an insurance policy the contract of insurance necessarily begets negligence or conflicts with public policy." *Breeden v. Frankfort Marine, Accident & Plate Glass Ins. Co.,* 220 Mo. 327, 119 S. W. 576; *California Ins. Co. v. Union Compress Co.,* 133 U. S. 387; *Perry v. Payne,* 217 Pa. 252, 11 L. R. A. (N. S.) 1173.

On behalf of the plaintiff, cases are cited to the effect that a municipal corporation may have a remedy over against the party who was immediately in fault. *Robbins v. City of Chicago,* 71 U. S. 657. Such cases are, however, not quite parallel with the instant case because a municipal corporation is not subject to statutes providing for fines and imprisonment. Here the legislature has made it a crime for the plaintiff to do that for which he now seeks indemnity from the defendant. The statute in ques-

tion is a penal statute. Apparently the intention of the legislature is to provide that in the construction of scaffolds, etc., extraordinary care should be taken so as to protect the public from unnecessary injury. As the act stands, the owner, contractor and subcontractor, each and all, are equally bound to inspect the construction of scaffolds and see that they are properly and safely constructed. Bearing in mind the apparent intent of the legislature, may the original contractor enter into an agreement of indemnity with a subcontractor, the effect of which is that the latter undertakes to assume the obligations imposed upon the former by the act in question, the statutory obligations being such that the failure to perform is a crime?

A number of cases are cited by counsel for the defendant holding that "contracts are illegal when founded upon a consideration *contra bonos mores* or against the principles of sound public policy or founded in fraud or in contravention of the provisions of some statute." *Goodrich v. Tenney*, 144 Ill. 422.

In *Fields v. Brown*, 188 Ill. 111, where an owner knowingly leased property for use as a house of ill-fame, which was a criminal offense, the court said in a suit for rent that: "The lessee in such case even though *in pari delicto* with the lessor ought not to be denied or deprived of the privilege of presenting the defense that the lease was illegal because of its being in violation of the public law of the State, for the defense is not allowed on the ground that the person presenting it is entitled to relief but, as we said in *Goodrich v. Tenney*, 144 Ill. 422, 'upon principles of public policy and to conserve the public welfare.'" *Penn v. Bornman*, 102 Ill. 523.

In *Crichfield v. Bermudez Asphalt Paving Co.*, 174 Ill. 466, where the court was considering a contract which provided for a contingent compensation for obtaining ordinances for paving, it is said: "The

principle to be extracted from all the cases is that the law will not lend its support to a claim founded on its violation.''

If it is to be assumed that the adjudication in the Slaughter case was to the effect that the John Griffiths & Son Company violated the statute referred to, and that it is the law that a right of action is denied to one who has suffered an injury which came about while violating a public statute, may it not follow, reasonably, that the plaintiff is not entitled to compensation under its contract of indemnity with the defendant?

The plaintiff was held liable to Slaughter only because it had violated a penal statute. That statutory obligation and the failure to fulfil it constituted a tort as well as a crime irrespective of the conduct of the defendant. It is true that if the defendant had obeyed the statute and constructed the scaffolding properly, there then would have been no ground for the judgment such as was rendered against the plaintiff for a violation of the statute. But are we concerned here with the comparative conduct of the two parties? Are they joint tort-feasors—assuming the tort involved to be a violation of the statute—and is one more to blame than the other? Each may have been liable for a violation of the statute, but the plaintiff may not, with reason, say to the defendant we are not *in pari delicto,* the statute was more of an obligation on you than on me. Penal statutes bind all equally. And when the jury in the Slaughter case found the plaintiff here (the Griffiths & Son Company) guilty of a violation of a penal statute, it inferentially decided that the promise of indemnity by the defendant, as far as it pertained to the liability arising out of the Slaughter judgment, was to pay the Griffiths & Son Company for a violation of a penal statute; and, under the law, such a promise cannot be enforced. The law will not permit one who is mulcted in damages for a violation of a penal statute

and for that only to recover on a promise of indemnity. Two or more persons, who, by reason of a given condition which has arisen, are equally guilty of violating a penal statute, may be joint tort-feasors, but, if they are, they are also something more, they are *particeps criminis,* and neither by the common law nor as the result of contract may any one of them sue any of the others for contribution, reimbursement or indemnity. *Harris v. Hatfield,* 71 Ill. 298.

The oft-quoted dictum of Lord Mansfield in *Holman v. Johnson,* Cowper, 341, is apt. "The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa,* or the trangression of a positive law of this country, there the court says he has no right to be assisted." Williston on Contracts, ch. 44.

The contract sued upon was not necessarily in toto in contravention of any statute, but the plaintiff's cause of action as set forth in the pleadings, being founded upon a judgment obtained by reason of a violation of the statute, the court on the ground of public policy refuses to aid it in obtaining indemnity. *Gibbs & Sterrett Mfg. Co. v. Brucker,* 111 U. S. 597.

It is argued on behalf of the plaintiff that it "has done no actual wrong," and, yet, the history of the Slaughter judgment, which the plaintiff here desires to obtain indemnity for, demonstrates that it came into being solely as the result of the plaintiff's violation of the statute.

The argument *ab inconvenienti* is urged. But the public welfare which evidently inspired the making of the statute must be considered as outweighing private convenience. Practically, as it is, the statute may make building more onerous; that, however, does not permit the court to refuse to apply it. If the plaintiff had fulfilled its duty as required by the stat-

ute and taken care that the scaffold had been "erected and constructed in a safe, suitable and proper manner" and "so erected and constructed, placed and operated, as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon" the injury to Slaughter would not have occurred; and, further, there would have been no violation of the statute justifying the judgment in the Slaughter case. The sole reason why the plaintiff is unable to obtain relief is that it failed to perform its own duty in compliance with the statute.