(No. 48757.—

RITA RAE SKINNER, a Minor, v. REED-PRENTICE
DIVISION PACKAGE MACHINERY CO., Appel-
lant.—(Hinckley Plastic, Inc., Appellee.)

*Opinion filed December 12, 1977.—Supplemental opinion
filed on denial of rehearing January 26, 1978.—
Opinion modified March 1, 1978.*

2

4

WARD, C.J., and UNDERWOOD and DOOLEY, JJ., dissenting.

Gerald E. Grashorn, Edward J. Wendrow, Frank L. Butler, and Stephen C. Bruner, all of Winston & Strawn, of Chicago, for appellant.

William H. Arpaia, Joseph B. Lederleitner, and Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Rita Rae Skinner, a minor, by Virginia Skinner, her mother and next friend, filed this action in the circuit court of Cook County seeking to recover damages for personal injuries suffered as the result of the alleged malfunction of an injection molding machine manufactured by defendant, Reed-Prentice Division Package Machinery Co. (hereafter manufacturer). The manufacturer filed a third-party complaint seeking contribution from the third-party defendant, Hinckley Plastic, Inc. (hereafter employer), by whom plaintiff was employed at

the time of her injuries. The circuit court allowed the employer's motion to dismiss the third-party complaint, the appellate court affirmed (40 Ill. App. 3d 99), and we allowed the manufacturer's petition for leave to appeal. The pleadings are adequately reviewed in the appellate court opinion, and it suffices here to state that plaintiff seeks to recover on the basis of strict liability in tort while the third-party complaint alleges negligence on the part of the employer. The relief asked by the manufacturer in its third-party complaint is "that if judgment be entered in favor of the plaintiff and against it that judgment be entered against the third party defendant and in favor of third party plaintiff in such amount, by way of contribution, as would be commensurate with the degree of misconduct attributable to the third party defendant in causing plaintiff's injuries."

In its dismissal order the circuit court observed that in *Gertz v. Campbell,* 55 Ill. 2d 84, this court "indicated that it might adopt the New York rule, because it stated, citing the *Dole* case [*Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 282 N.E. 286, 331 N.Y.S.2d 382] 'to illustrate, there can and should be a continuing search for better solutions. The Court of Appeals of New York has recently supplanted this active-passage negligence criteria from indemnitee with one founded on equitable principles.' " It concluded, however, "that there is no decision in this state allowing contribution under the facts pleaded in the third party complaint." In affirming the judgment, the appellate court concluded that "a decision to apply theories of contribution in the instant case would require substantive and procedural formulations beyond the authority of this court" and that the issue presented was "the type of issue which should be decided by the highest court of this State ***." 40 Ill. App. 3d 99, 104.

The manufacturer argues that no decision of this court prohibits contribution between tortfeasors; that where the

tort was not intentionally committed, sound public policy requires that contribution between tortfeasors be permitted; that a manufacturer held liable on the basis of strict liability in tort should have a right of contribution against others who contributed to cause the injuries; and that if this court should adopt a rule of contribution, it should be based on the relative degree of fault rather than on the basis of equal apportionment among the number of wrongdoers. The employer argues that the long-established rule in this State is that there is no right of contribution among tortfeasors; that the only exception to the general rule is that a "passive" tortfeasor may obtain indemnity from an "active" tortfeasor; and that a manufacturer held strictly liable in tort cannot seek indemnity from the employer for the reason that public policy requires that the manufacturer's liability be considered "active."

This court's holdings concerning indemnity and contribution and the allocation among tortfeasors of the economic loss resulting from injuries have been much discussed by the bench and bar. (See, *e.g.*, *Study Committee Report on Indemnity, Third Party Actions and Equitable Contributions*, 1976 Report of the Illinois Judicial Conference; *Report of Committee on Comparative Negligence*, 1964 Report of the Illinois Judicial Conference 110; *Moroni v. Intrusion-Prepakt, Inc.*, 24 Ill. App. 2d 534; *Sargent v. Interstate Bakeries, Inc.*, 86 Ill. App. 2d 187; Zaremski, *Expansion of Third Party Recovery: Common Law Indemnity, Contribution, Or ?*, 63 Ill. B.J. 684 (1975); Kissel, *Theories of Indemnity As Related to Third Party Practice*, 54 Chi. B. Rec. 157 (1973); Polelle, *Contribution Among Negligent Joint Tortfeasors in Illinois: A Squeamish Damsel Comes of Age*, 1 Loy. Chi. L.J. 267 (1970); Feirich, *Third-Party Practice*, 1967 U. Ill. L.F. 236.) In its report submitted at the 1976 Judicial Conference, the Study Committee on Indemnity, Third Party Actions and Equitable Contributions presented a

comprehensive review of the historic development of the law and its application to various types of litigation and concluded that the present rule "is harsh and inequitable in operation" and "has resulted in a great deal of judicial effort in expanding the concept of indemnity creatively in order to avoid the harsh result inherent in the rule." It unanimously recommended the adoption of the principle of contribution among joint tortfeasors and recommended that liability among joint tortfeasors "be apportioned on the basis of their pure relative fault."

As the court, quoting from Prosser, Torts 278 (3d ed. 1964), observed in *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 624: "There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead." In *Nelson v. Cook*, 17 Ill. 443, an action by a sheriff against a judgment creditor to recover the sum he was compelled to pay for the conversion of another's property, this court, considering the distinction for the first time, said: "The principle laid down in *Merryweather v. Nixan* [(1799), 101 Eng. Rep. 1337], 8 Term R. 186, that there is no right of contribution as between tort-feasors, or trespassers, has been, and still is, recognized as unquestionable law. But this does not affect the right of indemnity where a right of indemnity exists." (17 Ill. 443, 449.) Based on the facts before it the court held that the sheriff had no right of implied indemnity.

Concerning *Merryweather*, the English authority upon which the court relied, the author of a frequently cited law review article said:

"It is singularly unfortunate, and has led to misunderstanding, that Merryweather v. Nixan should have been continually treated as stating the 'general rule.' As a

matter of fact that case states not the rule, but the exception. The general rule is that among persons jointly liable the law implies an assumpsit either for indemnity or contribution, and the exception is that no assumpsit, either express or implied, will be enforced among wilful tort-feasors or wrongdoers.

\* \* \*

In considering the facts in Merryweather *v.* Nixan, and in applying that decision, it is important to bear in mind that the meaning of the word 'tort' at the time of the decision in 1799 was limited and narrow. None of the early writers, such as Bacon, accurately defined torts, but the actions which they treat as torts are practically all actions such as batteries, slanders, etc., which were, of course, wilful or intentional wrongs. At that time the word 'tort' had not come to be applied to the vast number of *quasi delicts* now known and classified as actions sounding in tort and arising out of mere negligence or unintentional injury. The classification of such actions as technical torts is of comparatively recent date. It is, therefore, vital to a correct understanding of the decision, that this limited meaning of the word 'tort'—*i.e.,* a wilful or intentional wrong—be remembered." Reath, *Contribution Between Persons Jointly Charged for Negligence—Merryweather v. Nixan,* 12 Harv. L. Rev. 176, 177-78 (1898).

In *Johnson v. Chicago & Pacific Elevator Co.*, 105 Ill. 462, in which it next considered contribution among tortfeasors, the court affirmed the denial of an application to be joined as a defendant made by an individual who alleged an interest in the action because he would be liable to contribute to the judgment if the defendant were held liable. The court, without citation of authority, said: "[T]here is no right of contribution between wrongdoers." 105 Ill. 462, 468.

In *Farwell v. Becker,* 129 Ill. 261, the court was presented for the first time, and until this case the only time, with the precise question whether there is a right of contribution among tortfeasors. In *Farwell* a number of creditors, by attachment, without knowledge of any

wrongdoing, converted the chattels of a third person. One creditor, who was forced to pay the entire claim, was held entitled to contribution in equal shares from the other creditors. In its opinion the court reviewed *Merryweather* and the decisions of other State courts and concluded that the rule prohibiting contribution among tortfeasors was confined to intentional wrongdoers, or wrongdoers presumed to know that their act was unlawful. *Farwell* has not been cited, followed or overruled in subsequent decisions of this court.

Dean Prosser, in discussing the application by courts in this country of the rule of *Merryweather v. Nixan* states: "The early American cases applied the rule against contribution to cases of wilful misconduct, but refused to recognize it where the tort committed by the claimant was a matter of negligence or mistake. But once the door was thrown open to joinder in one action of those who had merely caused the same damage, the origin of the rule and the reason for it were lost to sight. The great majority of our courts proceeded to apply it generally, and refused to permit contribution even where independent, although concurrent, negligence had contributed to a single result." Prosser, Torts sec. 50, at 306 (4th ed. 1971).

In *Consolidated Ice Machine Co. v. Keifer,* 134 Ill. 481, the court joined "the great majority" of courts described by Dean Prosser that, while permitting joinder of alleged joint tortfeasors, continued to proscribe contribution. In *Consolidated,* holding that two corporations whose concurrent negligence had caused the death of a laborer were properly joined as defendants, the court, without citation of authority, said: "There can, in such case, be no apportionment of damages as between the several parties whose negligent acts and conduct have contributed to the injury. Nor can one of the wrongdoers compel contribution from the other." (134 Ill. 481, 493.) Except for *Wanack v. Michels,* 215 Ill. 87, and *Skala v.*

*Lehon,* 343 Ill. 602, the court has not qualified the statement that there is no right of contribution among tortfeasors. (See *John Griffiths & Son Co. v. National Fireproofing Co.,* 310 Ill. 331, 339; *Chicago & Illinois Midland Ry. v. Evans Construction Co.,* 32 Ill. 2d 600, 603; *Miller v. DeWitt,* 37 Ill. 2d 273, 289; *Muhlbauer v. Kruzel,* 39 Ill. 2d 226; *Reese v. Chicago, Burlington & Quincy R.R. Co.,* 55 Ill. 2d 356; *Carver v. Grossman,* 55 Ill. 2d 507, 510.) In *Wanack,* which involved an intentional tort, the court stated that the noncontribution rule applied only to intentional wrongdoing. (215 Ill. 87, 94.) In *Skala* the court said: "It is true, as a general rule, that the right of contribution does not exist as between joint tort feasors where there is concerted action in the commission of the wrong. Where, however, there is no concerted action the rule does not apply, as the parties in such case are not *in pari delicto* as to each other, and as between themselves their rights may be adjusted in accordance with the principles of law applicable to the relation in fact existing between them." 343 Ill. 602, 605.

Distinguishable from the case before us in that the alleged misconduct of the third-party defendant was subsequent to, rather than concurrent with, that of the third-party plaintiff, but illustrative of the "continuing search for better solutions," is the case of *Gertz v. Campbell,* 55 Ill. 2d 84. Plaintiff Gertz, a minor, filed suit against Campbell alleging that he was injured by reason of Campbell's negligent operation of an automobile. Campbell filed a third-party action against Dr. H. M. Snyder, the physician who treated Gertz, alleging malpractice in the treatment and seeking indemnity for any damages which might be assessed against Campbell under Gertz' complaint but which were attributable to the doctor's malpractice. Relief sought in the third-party action was "indemnity and judgment against Dr. Snyder for the amount of damages caused to the plaintiff as the result of the new injury or

aggravation of the plaintiff's existing injuries caused by the neglect and failure of Dr. Snyder." The court, after noting the distinction between contribution and indemnity, and recognizing that under Illinois case law there was no contribution between tortfeasors, concluded that Campbell did not seek indemnity for the total recovery for the plaintiff, but sought indemnity for the damages attributable to the fault of Snyder, and held that Campbell "had a right to bring the action to be indemnified for the damages to the plaintiff attributable to the malpractice." 55 Ill. 2d 84, 92.

Although this court has earlier recognized that under appropriate circumstances there existed the right of indemnification among tortfeasors (*Nelson v. Cook,* 17 Ill. 443), in *John Griffiths & Son Co. v. National Fireproofing Co.,* 310 Ill. 331, it was presented, for the first time, the question whether a written indemnification agreement between two parties, both liable under the Structural Work Act, was against public policy. In holding that the agreement was not against public policy, the court, at some length, discussed the concept of active-passive negligence as applied in other jurisdictions as the basis for the right of implied indemnity between tortfeasors.

In *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.,* 343 Ill. App. 148, citing *John Griffiths & Son Co.* as authority, the appellate court expanded the concept of implied indemnification among tortfeasors by applying the active-passive negligence doctrine. The rule as discussed and applied by many appellate court opinions was finally recognized by this court in *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.,* 32 Ill. 2d 600, and later in *Miller v. DeWitt,* 37 Ill. 2d 273, *Muhlbauer v. Kruzel,* 39 Ill. 2d 226, *Carver v. Grossman,* 55 Ill. 2d 507, and *Harris v. Algonquin Ready Mix, Inc.,* 59 Ill. 2d 445.

This court has candidly recognized that the concept of implied indemnity, based on the active-passive negligence

doctrine, "has been utilized to mitigate the harsh effects that could result from an inflexible application of this judicially created bar to contribution." (*Muhlbauer v. Kruzel,* 39 Ill. 2d 226, 230.) The application of this all or nothing liability based on terms of active-passive negligence, which "have not obtained precise judicial definition" (see *Carver v.Grossman,* 55 Ill. 2d 507, 511), to the ever increasing situations where there is some fault attributable to both parties produces harsh effects without uniformity of result.

A technique recently employed by the bar to circumvent the noncontribution rule has been the use of the loan receipt, approved by this court in *Reese v. Chicago, Burlington & Quincy R.R. Co.* 55 Ill. 2d 356. This, too, involves the application of an all or nothing rule of liability to situations where some fault is attributable to both parties, and also raises other problems. See *Harris v. Algonquin Ready Mix, Inc.,* 59 Ill. 2d 445; *Gatto v. Walgreen Drug Co.,* 61 Ill. 2d 513; Michael, *"Mary Carter" Agreements in Illinois,* 64 Ill. B.J. 514 (1976); Duree, *Has The Loan Receipt Agreement Established Reverse Comparative Negligence Or Indemnity Among* Active *Tortfeasors In Illinois?,* 64 Ill. B.J. 236 (1975); Freedman, *The Expected Demise of "Mary Carter": She Never Was Well!,* 1975 Ins. L.J. 602; Note, *The Mary Carter Agreement— Solving the Problems of Collusive Settlements in Joint Tort Actions,* 47 S. Cal. L. Rev. 1393 (1974).

Having recognized that the application of the no-contribution rule causes unjust results and having stated that the active-passive theory of indemnity was designed to mitigate the harsh effects of its application, the only reason found in the opinions of this court for its continued existence appears in *Reese,* where it was said that "the principal objection to contribution [is] use of the courts for relief of wrongdoers" (55 Ill. 2d 356, 363-64). As noted earlier in this opinion, when *Merryweather* was

decided, the term "tortfeasors" meant intentional wrong-doers, not the negligent and "strict liability" tortfeasors of today. One of the findings of the Study Committee on Indemnity, Third Party Actions and Equitable Contributions in its report presented to the 1976 Judicial Conference is that the no-contribution rule does not save judicial time and energy in defining the degree of culpability of joint tortfeasors because the court must search for a "qualitative distinction between the negligence of the two tortfeasors" (see *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill. 2d 600, 603) under the active-passive doctrine. It also presents opportunity for fraud and collusion among the parties, necessitating further judicial efforts in monitoring their out-of-court behavior. Other objections to contribution have been rejected by almost every writer on the subject. See Comment, *The Allocation of Loss Among Joint Tortfeasors*, 41 S. Cal. L. Rev. 728 (1968), and cases and law review articles cited therein.

We are of the opinion that there is no valid reason for the continued existence of the no-contribution rule and many compelling arguments against it. We agree with Dean Prosser that "[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free." Prosser, Torts sec. 50, at 307 (4th ed. 1971).

The employer argues that the abolition of the no-contribution rule would produce substantial change in the fabric of tort law and substantial changes are best left to the General Assembly. Where this court has created a rule or doctrine which, under present conditions, we consider unsound and unjust, we have not only the power, but the

duty, to modify or abolish it. For the purposes of the motion to dismiss, the allegations of fact in the third-party complaint must be taken as true (*Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill. 2d 93, 96), and on these facts the governing equitable principles require that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and the employer's conduct proximately caused them. *Suvada v. White Motor Co.,* 32 Ill. 2d 612, 623; *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill. 2d 11, 25.

Citing *Texaco, Inc. v. McGrew Lumber Co.,* 117 Ill. App. 2d 351, *Kossifos v. Louden Machinery Co.,* 22 Ill. App. 3d 587, and *Burke v. Sky Climber, Inc.,* 57 Ill. 2d 542, the employer argues that a defendant held strictly liable in tort is precluded from seeking contribution "because public policy requires that its liability to an original plaintiff be considered active" and that the duty imposed in strict liability is more stringent than in cases involving negligence. We do not agree. The public policy considerations which motivated the adoption of strict liability (see *Suvada v. White Motor Co.,* 32 Ill. 2d 612) were that the economic loss suffered by the user should be imposed on the one who created the risk and reaped the profit, including everyone from the manufacturer on through to the seller or any one of them. When the economic loss of the user has been imposed on a defendant in a strict liability action the policy considerations of *Suvada* are satisfied and the ordinary equitable principles governing the concepts of indemnity or contribution are to be applied. Thus, in *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.,* 62 Ill. 2d 77, where the assembler of the product, who had settled strict liability actions against it, filed an indemnity action against the producer of the defective component part, the court adopted a rule for indemnification in the manufacturer-

distributor-seller chain. After noting that the policy reasons for adopting strict liability in *Suvada* were not the same as those determining the ultimate liability in the manufacturer-distributor chain, the court, in effect, put the assembler in the shoes of the user and the producer into the shoes of the assembler in order for the assembler to shift the full economic loss to the producer. The court said: "In our judgment, the rule we are adopting is a logical and necessary [and equitable] extension of the principles enunciated in *Suvada* and *Williams*. It does not impose an undue burden on defendant and those similarly situated, for it is they who originated the defective product. Nor does it make them absolute insurers of the safety of their products. Plaintiffs in such indemnity actions must still prove the necessary elements of a strict liability action—that the product contained a defective condition which existed at the time it left defendant's control, rendering the product unreasonably dangerous and proximately causing the injury resulting in plaintiff's liability to the injured party. [*Suvada* theory of strict liability from seller through manufacturer.] And while proof of an indemnitee's negligence will not serve to bar a strict liability indemnity claim, proof that he misused the product or assumed the risk of the defect will be an effective bar to recovery." 62 Ill. 2d 77, 84-85.

Misuse of the product or assumption of the risk by a user will serve to bar his recovery (*Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418), and indemnity is not available to one who misuses the product or assumes the risk of its use (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 62 Ill. 2d 77). We are of the opinion that if the manufacturer's third-party complaint alleges that the employer's misuse of the product or assumption of the risk of its use contributed to cause plaintiff's injuries, the manufacturer has stated a cause of action for contribution. The fact that the employee's action against

the employer is barred by the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, pars. 138.5, 138.11) would not preclude the manufacturer's third-party action against the employer for indemnification (*Miller v. DeWitt,* 37 Ill. 2d 273) and should not serve to bar its action for contribution.

We hold that the third-party complaint, although pleaded in terms of negligence, alleges misuse of the product and assumption of risk on the part of the employer and states a cause of action for contribution based on the relative degree to which the defective product and the employer's misuse of the product or its assumption of the risk contributed to cause plaintiff's injuries. For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Reversed and remanded.*

Supplemental Opinion on Denial of Rehearing

The employer has filed a petition for rehearing urging, *inter alia,* that the holding in this case be given only prospective application. The Illinois Defense Counsel, as *amicus curiae,* pursuant to leave granted, has filed a motion "to invoke doctrine of prospective operation." Although not in agreement with either the employer or *amicus* as to the manner in which the "prospective operation" should apply, the manufacturer has also filed suggestions urging "prospective operation."

We have considered the arguments and have unanimously concluded that there are present here many of the problems and conditions which compelled the prospective application of the decisions in *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill. 2d 11, and *Renslow v. Mennonite Hospital,* 67 Ill. 2d 348, and that this decision, too, should be prospective in operation. We

hold, therefore, that the decisions in this cause, *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, will apply prospectively to causes of action arising out of occurrences on and after March 1, 1978.

MR. CHIEF JUSTICE WARD, dissenting:

I must dissent from the judgment of the court in this cause and in *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, reversing the dismissal of the third-party complaints.

The situation in which the doctrine of contribution properly has been applied is that in which the independent acts of two or more tortfeasors (among whom there exists no antecedent express or implied agreement of indemnity) combine to produce a single, indivisible injury, and where each party, unlike the situation here, is liable to the plaintiff in tort on the ground of negligence or of strict liability. (Prosser, Torts 309 (4th ed. 1971).) The majority correctly observes that such cases do not lend themselves readily to a qualitative analysis of tortious conduct as "active" or "passive," as the indemnity theory requires.

Yet in *Skinner* the majority predicates its proposal for allowance of contribution among tortfeasors on the theory that the "ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and the employer's conduct proximately caused them." (70 Ill. 2d at 14.) Although the majority opinion does not elaborate on its meaning, this standard suggests some quantitative comparison, such as 60 percent to 40 percent, instead of the qualitative comparison of active and passive made in the indemnity cases. The majority does not show that the determination of what percentage of the plaintiff's damages should be

attributable to each tortfeasor will prove any more manageable than the active-passive test used for indemnity.

There are a few jurisdictions in which the amount of the contribution between joint tortfeasors is based on the relative fault of each tortfeasor. (See, *e.g.*, *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N.W.2d 105; Annot., 53 A.L.R.3d 184 (1973).) As Prosser observes, the usual method of distributing the loss, however, has been to divide the total damages *pro rata* without regard to comparative fault. That is the method adopted under the current provisions of the Uniform Contribution Among Tortfeasors Act as revised in 1955. (12 Uniform Laws Annotated secs. 1(b), (2).) Of the 18 jurisdictions which have adopted either the 1955 uniform act or its 1939 predecessor, some 13 appear to use the *pro rata* approach. (See 12 Uniform Laws Annotated 34 (1978). *Cf.* Annot., 53 A.L.R.3d 184, 191-92, 197-98 (1973). See also Commissioners' Prefatory Note (1955 Revision), 12 Uniform Laws Annotated 59-60; Commissioners' Prefatory Note (1939 Act), 12 Uniform Laws Annotated 60-62; Commissioners' Comment to section 1(a), 12 Uniform Laws Annotated 64; *Early Settlers Insurance Co. v. Schweid* (D.C. 1966), 221 A.2d 920; Prosser, Torts 310 (4th ed. 1971).) The conceptual basis for *pro rata* contribution is of course that one tortfeasor has discharged an obligation for which the other tortfeasor was also liable.

In any event, the majority's rule of apportionment should not have application in these cases. The plaintiffs are proceeding against the defendant manufacturers on the theory of strict liability, and of course negligence or its absence is not a factor in determining the liability of the defendants. These defendants thus may be without culpability in the sense that they were nonnegligent. The majority says that the extent of liability among tortfeasors should be determined by their relative roles in proximately

causing the plaintiffs' injuries, but it seems to me that this formula cannot properly be applied in the absence of a common standard of comparison. The plaintiffs seek to recover on the ground of strict liability; the defendants in their third-party complaints allege negligence by the employers. What will be the method of comparison, with negligence not a factor in determining the defendants' liability?

As Mr. Justice Dooley details in his dissent, in the majority opinion there is a confusing of contribution and indemnity. Until now these terms had distinctive meanings.

Somewhat remarkably, I think, the majority does not mention *Maki v. Frelk* (1968), 40 Ill. 2d 193, in which this court declined to abandon our rule on contributory negligence in favor of a comparative negligence rule. I do not recede from the dissenting position which Mr. Justice Schaefer and I took in *Maki*. While a distinction may be drawn between the question of apportionment as it arises in the context of contribution and as it appears in the context of contributory negligence, the holding in *Maki* that any change in the law of contributory negligence should be left to the legislature has been, it seems, overruled *sub silentio* in *Skinner* and the companion cases.

Finally, the majority's review of *Merryweather v. Nixan* (1799), 101 Eng. Rep. 1337, 8 Term R. 186, and of some of this court's decisions suggests that the rule against contribution between joint tortfeasors where the tort was one of intentional misconduct or of concerted action has not been disturbed, but the opinion does not make an explicit pronouncement to this effect. Torts of this character do not come within the rationale of the doctrine of contribution, and the rule denying contribution in that situation should be preserved. I would state clearly that it is being retained.

MR. JUSTICE UNDERWOOD, dissenting:

I agree with much of what the Chief Justice and Mr. Justice Dooley have written, but feel compelled to speak to the majority's citation of *Miller v. DeWitt* (1967), 37 Ill. 2d 273, as authority for the result it reaches here. *Miller* involved an action by injured contractor's employees against, among others, the architects who had designed the structure. The complaint alleged both negligence and Structural Work Act violations. The architects filed a third-party action against the contractor-employer of the plaintiffs, seeking indemnity on the ground that the contractor-employer's negligence was active while any negligence by the architects had been passive. The trial court dismissed that third-party action and this court reversed, holding the third-party complaint stated a cause of action.

The plaintiffs in *Miller* had been paid benefits under the Workmen's Compensation Act, and the third-party defendant-employer argued that both the theory of the Act and its language limited his liability to the payment of the employee benefits therein prescribed. He urged that to permit recovery by the architects would allow indirectly that which could not be done directly. Acknowledging some merit to the employer's position and conceding the question to be a close one, this court concluded that indemnification should be permitted because "unless a third party who has not been guilty of active negligence can succeed in an action against an employer who has been guilty of active negligence, the third party will be made to bear the ultimate burden of a loss which should fall on the employer." (37 Ill. 2d 273, 289.) It was the fact that the employer in *Miller* was *more culpable* than the architects which persuaded the court to breach the limitations upon the employer's liability. Because there is in this case no corresponding requirement that the employer's culpability be substantially greater than that of the manufacturer

before the employer's limited liability is again breached, it seems to me that the majority opinion repudiates, in a manner never contemplated by *Miller,* the very theory upon which the Workmen's Compensation Act became law.

I must add to the comments of Mr. Justice Dooley the observation that in a single sentence the majority has altered beyond recognition the theory of strict product liability in Illinois. Heretofore in this State it has been indisputably clear, as acknowledged by the majority, that misuse of a product or assumption of the risk of its use precluded liability on the part of the manufacturer. The manufacturer or supplier was liable to an injured plaintiff only if no intervening cause, such as misuse, supplanted the precedent causation of the defect. The identity of the one responsible for the intervening cause, whether it be the plaintiff, employer or a third party, was irrelevant, since the fact remained that the defect was not the proximate cause of the injury. (Prosser, Torts, sec. 102 (4th ed. 1971); 2 L. Frumer & M. Friedman, Products Liability sec. 16A(4)(d); see also *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 102, where this court held the question whether an employer had misused a manufacturer's product, thus barring recovery by the plaintiff-employee from the manufacturer, was a jury question.) Now, in a sentence which seems to me internally contradictory, the majority says, "We are of the opinion that if the manufacturer's third-party complaint alleges that the employer's misuse of the product or assumption of the risk of its use contributed to cause plaintiff's injuries, the manufacturer has stated a cause of action for contribution." (70 Ill. 2d at 15.) If misuse and assumption of risk bar recovery, as they heretofore have, what is there to contribute to? The only conclusion I can draw is that the manufacturer has now been shorn of the sole protection he formerly had against strict liability actions and

has become the insurer of the user. In exchange the manufacturer is apparently given a cause of action for contribution from a third party (usually the employer) whose "misuse" or "assumption of the risk" of use of the product has injured the user (usually the employee-plaintiff). Nothing in product liability law supports this result.

In my judgment the majority has erred for an additional reason. The court's opinion is obviously the forerunner of other and equally substantial innovations in the tort law of Illinois. It is far preferable, I believe, that new law as significant as that here declared, and that presaged, be enacted legislatively. (*Maki v. Frelk* (1968), 40 Ill. 2d 193.) Such a course not only respects the separation of powers principles incorporated in our State and Federal constitutions, but affords the only means of simultaneously considering and acting upon all of the areas in which this new law will require change. Instead of the comprehensive and consistent changes which could thus be accomplished, we now have a confusing merger of indemnity and contribution, negligence and strict liability in a manner which creates more problems than it resolves.

\*MR. JUSTICE DOOLEY, dissenting:

Today we have buried a great body of Illinois law. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, *Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, *aff'g* 94 Ill. App. 2d 6, *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, are but samples of Illinois authorities expressing the doctrine of strict liability and its facets which have been implicitly

---

\* Mr. JUSTICE DOOLEY's dissent is addressed to the majority opinion prior to its modification on March 1, 1978. Mr. JUSTICE DOOLEY's untimely death precluded any revision of the dissent.

overruled. Also amongst the corpses are those decisions which, consistent with the concept of strict liability, have refused to allow a manufacturer liable under this teaching to pass on its responsibility in whole or in part to a third party. Some of those swept away—and again by implication—are *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, *Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, *Vassolo v. Comet Industries, Inc.* (1975), 35 Ill. App. 3d 41, *Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, *Stanfield v. Medalist Industries, Inc.* (1974), 17 Ill. App. 3d 996, *Burke v. Sky Climber, Inc.* (1973), 13 Ill. App. 3d 498, *aff'd* (1974), 57 Ill. 2d 542, and *Texaco, Inc. v. McGrew Lumber Co.* (1969), 117 Ill. App. 2d 351.

Contribution and indemnity have been commingled as if they were identical. Each is a precept wholly different from the other. *Gertz v. Campbell* (1973), 55 Ill. 2d 84, and *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, are illustrative of this proposition. These and many other decisions which make up our entire body of law on contribution and indemnity have likewise been overruled.

When established precedents are to be swept aside, it should not be accomplished without at least referring to them. Bold assertions which completely abandon well-established doctrines are never a means of resolution of legal issues.

The majority opinion raises such novel theories as "assumption of risk" by plaintiff's employer, a noninjured party—a concept unknown to the law in the 140 years of the existence of the doctrine of assumption of risk. The majority's position fails to face up to the meaning of assumption of risk. It cannot be the basis of a third party action. And the majority fails to show how it could be employed in this context.

So also, misuse by an employer is erroneously termed

a defense. But it is part and parcel of plaintiff's action in strict liability in tort to plead and prove that the product was being used for a reasonably foreseeable purpose. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 83; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 344; *Cronin v. J.B.E. Olson Corp.* (1972), 8 Cal. 3d 121, 134, 501 P.2d 1153, 1162, 104 Cal. Rptr. 433, 442; *Higgins v. Paul Hardeman Co.* (Mo. App. 1970), 457 S.W.2d 943, 948; Restatement (Second) of Torts sec. 402A, Comment h (1965); D. Noel, *Manufacturer's Negligence of Design or Directions for Use of a Product,* 71 Yale L.J. 816, 858 (1962).

The majority opinion raises a question overshadowing all others. Has Illinois adopted not a doctrine of comparative negligence, but a doctrine of comparative fault? That such is what the majority stands for is apparent from their statement in *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, written by the same author as *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1. Referring to *Skinner,* the majority in *Stevens* states: "We held, therefore, that the governing equitable principles required that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree of fault of those whose conduct proximately caused them." Slip op. at 2.

How can there be a comparison between the manufacturer's fault and the employer's fault, when fault is not the question? If the unreasonably dangerous product is put in commerce and is a proximate cause of injury, how can contribution and indemnification on the basis of the employer's negligence be in proportion to the wrong of a manufacturer?

That strict liability is not based on fault is well recognized. In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, where this State adopted the doctrine as well as

section 402A of the Restatement (Second) of Torts (1965), such considerations as public interest in human life and health, the manufacturer's solicitations to purchase, and the justice of imposing liability on one who creates the risk and reaps the profit, are described as the motivating forces for the adoption of the doctrine. (See also *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82; *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697.) Other policy considerations were the ability of the manufacturer to anticipate some hazards and guard against their recurrence, which the consumer cannot do. (*Brandenburger v. Toyota Motor Sales, U.S.A., Inc.* (1973), 162 Mont. 506, 513-14, 513 P.2d 268, 273; *Santor v. A & M Karagheusian, Inc.* (1965), 44 N.J. 52, 60, 207 A.2d 305, 312; Restatement (Second) of Torts sec. 402A, Comment *c* (1965).) Stated otherwise, there was the incentive to the manufacturer to enhance the safety of its product. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 344; *Vandermark v. Ford Motor Co.* (1964), 61 Cal. 2d 256, 262, 391 P.2d 168, 171-72, 37 Cal. Rptr. 896, 899-900.) An important consideration was distribution of the cost of injury amongst the public as the cost of doing business. See *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 63, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701.

That negligence is not part of this doctrine is pointed out by *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612. There, defendant Bendix, strictly liable in tort as a manufacturer of a component part, the brake system, urged that plaintiffs, truck owners, who had paid sums in settlements of claims brought by injured persons as a result of this defective brake system, were joint tortfeasors or actively negligent. This court, in rejecting that argument, took a position directly contrary to that of the majority here, stating:

"Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix was actively negligent would be the antithesis of strict liability.)" 32 Ill. 2d 612, 624.

Under strict liability, responsibility is imposed because of the character of the product, not because of fault. (*Bachner v. Pearson* (Alaska 1970), 479 P.2d 319, 329; *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 851.) Under the Restatement of the Law of Torts, it is immaterial that the manufacturer has "exercised all possible care in the preparation and sale of his product." Restatement (Second) of Torts sec. 402A(2)(a) (1965); *Lunt v. Brady Manufacturing Corp.* (1970), 13 Ariz. App. 305, 307, 475 P.2d 964, 966.

In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, the insurance company, as subrogee for its insured, Charles Machine Works, the manufacturer of the finished product, sued the defendant, the manufacturer of the defective component part, to recover sums it paid in settlements of claims made against Charles Machine Works. This court observed:

"The major purpose of strict liability is to place the loss caused by defective products on those who create the risk and reap the profit by placing a defective product in the stream of commerce, regardless of whether the defect resulted from the 'negligence' of the manufacturer. We believe that this purpose is best accomplished by eliminating negligence as an element of any strict liability action, including indemnity actions in which the parties are all manufacturers or sellers of the product." (62 Ill. 2d 77, 82.)

The court further quoted from Frumer's and Friedman's excellent work on products liability (2 L. Frumer & M. Friedman, Products Liability sec. 16A(4)(b)(i)):

"As one authority has observed: 'In many jurisdictions, the right of contribution between joint tortfeasors is denied if they are at equal fault, but not denied if the tortfeasor seeking contribution was only passively negligent. *The difficulty of applying this test to strict liability cases is that negligence is irrelevant for determining liability. It is a liability based upon the placing into commerce of a product which, if defective, is likely to be unreasonably dangerous under normal use.*'" (Emphasis added.) 62 Ill. 2d 77, 82.

Contributory negligence on the part of the user is not an issue. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 423.) It should be crystal clear that negligence or any other concept of fault is anathematic to the tenets of strict liability.

California, by judicial fiat, adopted comparative negligence in *Li v. Yellow Cab Co.* (1975), 13 Cal. 3d 804, 532 P.2d 1226, 119 Cal. Rptr. 858. In its modified opinion, the California Supreme Court was careful to delimit the meaning of the word "fault." In a footnote it stated: "In employing the generic term 'fault' throughout this opinion, we follow a usage common to the literature on the subject of comparative negligence. In all cases, however, we intended the term to import nothing more than 'negligence' in the accepted legal sense." (13 Cal. 3d 804, 813 n.6a, 532 P.2d 1226, 1232 n.6a, 119 Cal. Rptr. 858, 864 n.6a.) The significance of this was, according to one authority (V. Schwartz, *Comparative Negligence in California, Li v. Yellow Cab Co.: A Survey of California Practice Under Comparative Negligence,* 7 Pac. L.J. 747, 756 (1976), that "the court was careful not to venture into the land of strict liability." We agree that such could be the only meaning to be given the modification by a court which not only pioneered but treated more aspects of the doctrine of strict liability in tort than any court.

It is clear that the objectives of the doctrine are to protect the consumer and to make responsible the manufacturers who put in commerce unreasonably dangerous products which cause injury. If these goals are to be accomplished, ultimate liability for injury from the defective product must rest on the manufacturer. Thus, liability has been permitted to flow from the retailer (*Vandermark v. Ford Motor Co.* (1964), 61 Cal. 2d 256, 391 P.2d 168, 37 Cal. Rptr. 896) to reach the manufacturer or from the manufacturer of the defective product to the manufacturer of the component part which made the finished product defective (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77).

These were the compelling reasons why the obligation to produce a reasonably safe product was made nondelegable. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 85; *Bexiga v. Havir Manufacturing Corp.* (1972), 60 N.J. 402, 410, 290 A.2d 281, 285; *Vandermark v. Ford Motor Co.* (1964), 61 Cal. 2d 256, 262, 391 P.2d 168, 171, 37 Cal. Rptr. 896, 899.) Nondelegable means that the obligation cannot be transferred to others.

It would frustrate the intent of strict liability to permit the manufacturer of the unreasonably dangerous, injury-causing product to pass on his liability to another so that the maker might either be indemnified or obtain some contribution.

The majority opinion treats strict liability as if the manufacturer's responsibility were predicated upon negligence concepts. All cases and surveys referred to in the majority opinion to support its position involve negligent tortfeasors. *Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382, the only products case cited, was an action predicated against the manufacturer on negligence, not strict liability. Plaintiff's action there was against a chemical company for negligently labeling a fumigant used by an employer. The

manufacturer's third-party action against the employer was for breach of an independent duty owed plaintiff.

The majority fails to address another threshold question. How can the employer, who cannot be termed a tortfeasor, be sued for apportionment of damages in the nature of contribution or indemnity?

The employer has an absolute liability, irrespective of negligence. The employee's action against the employer is for benefits fixed by section 5 of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5). The employee's action against the third party is for common law damages. It would appear obvious that the difference in character between the two cannot result in a common liability. Even the Uniform Contribution Among Tortfeasors Act defines the joint tortfeasor as a person jointly or severally "liable in tort." (Uniform Contribution Among Tortfeasors Act sec. 1(a).) Prosser states: "The contribution defendant must be a tortfeasor, and originally liable to the plaintiff. If there was never any such liability, *** then he is not liable for contribution." Prosser, Torts sec. 50, at 309 (4th ed. 1971).

It is indispensable in the law of contribution that there be a right of action in tort against both parties, the one seeking contribution and the party from whom contribution is sought. (*William H. Field Co. v. Nuroco Woodwork, Inc.* (1975), 115 N.H. 632, 348 A.2d 716; *Cacchillo v. H. Leach Machinery Co.* (1973), 111 R.I. 593, 305 A.2d 541; *Grove Manufacturing Co. v. Cardinal Construction Co.* (Tex. Civ. App. 1976), 534 S.W.2d 153; 2A A. Larson, Workmen's Compensation sec. 76.21 (1976 & Supp. 1977).) Contribution is a derivative of the plaintiff's cause of action; it is not a new right of action. *Grove Manufacturing Co. v. Cardinal Construction Co.* (Tex. Civ. App. 1976), 534 S.W.2d 153; *William H. Field Co. v. Nuroco Woodwork, Inc.* (1975), 115 N.H. 632, 348 A.2d 716.

Since the employee under a workmen's compensation act has no tort action against his employer, the employer is not a joint tortfeasor with the third party liable to the employee in tort. He does not share a common liability. (*William H. Field Co. v. Nuroco Woodwork, Inc.* (1975), 115 N.H. 632, 348 A.2d 716; *Cacchillo v. H. Leach Machinery Co.* (1973), 111 R.I. 593, 305 A.2d 541; *Grove Manufacturing Co. v. Cardinal Construction Co.* (Tex. Civ. App. 1976), 534 S.W.2d 153; *Kessler v. Bowie Machine Works, Inc.* (8th Cir. 1974), 501 F.2d 617 (applying South Dakota law); 2A A. Larson, Workmen's Compensation sec. 76.21 (1976 & Supp. 1977).) In light of these well-established principles, the employer cannot be subject to contribution. Yet the majority ignores these realities.

The majority's opinion, whose vulnerability is evidenced by the want of a single authority to support its position, concludes thus:

"We hold that the third-party complaint, although charging negligence, alleges misuse of the product and assumption of risk and states a cause of action for contribution based on the employer's relative degree of fault which contributed to cause plaintiff's injuries." Slip op. at 9.

As I have observed, this is a novel employment of what the majority terms "assumption of risk." In strict liability actions, assumption of risk is an affirmative defense by the manufacturer or retailer against the injured user only. To assert such defense, the manufacturer must allege and prove that the plaintiff was aware of the product's dangerous nature, that he continued to use the product despite such knowledge, and that this assumption of risk was the proximate cause of his injuries. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430; *Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 66 *aff'g* 94 Ill. App. 2d 6; see *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 990;

*Ferraro v. Ford Motor Co.* (1966), 423 Pa. 324, 327, 223 A.2d 746, 748; Restatement (Second) of Torts sec. 402A, Comment *n* (1965).) The test in true assumption of risk cases is subjective. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430.) It is whether the particular person knew or ought to have known of the defect, and nonetheless, having knowledge of the dangers which would result from the use of the product, embarked upon its employment. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 423.

Assumption of risk first developed in master and servant cases. It has now been abrogated by the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). It appeared on the scene in 1837 in *Priestly v. Fowler* (Exch. 1837), 3 Mees. & W. 1, 150 Eng. Rep. 1030, 19 Eng. Rul. Cas. 102. In 1953, Mr. Justice Black described it thus:

> "Perhaps the nature of the present problem can best be seen against the background of one hundred years of master-servant tort doctrine. Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period to insulate the employer as much as possible from bearing 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrialized business." *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 58, 87 L. Ed. 610, 613, 63 S. Ct. 444, 447.

Assumption of risk is today limited in negligence actions to situations where a contractual relationship exists. *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 533-34.

Yet, never since 1837 has assumption of risk been the basis of an original action. Assumption of risk is by its nature a defense in an action by an injured person, be it assumption of risk as it is known in common law

negligence or in strict liability in tort. Nor are we told by the majority opinion how assumption of risk can be the basis of an action against a third party.

An examination of the third-party complaints in these cases reveals much. In *Skinner,* the manufacturer alleged that in 1959 it had fabricated the particular machine, and that between that date and August 3, 1972, the date of the occurrence, the machine had been sold and resold to successive users. It further urged that the unreasonably dangerous character of the machine was caused by the third-party defendant, as well as the intervening owners. Obviously, these facts, if true, constituted a defense to the original action. The product must be substantially in the same condition at the time it causes injury as at the time it left the manufacturer's possession, and, at the time of the injury, it must have been used for a reasonably foreseeable purpose if liability is to attach to the manufacturer.

The third-party complaint alleges that plaintiff's injuries resulted from a combination of the conduct of both defendants, so that they were co-tortfeasors. As we have seen, the manufacturer's liability arises not from his conduct but from putting into commerce an unreasonably dangerous product. Nor, as has been pointed out, can an employer be a co-tortfeasor under the Workmen's Compensation Act.

In *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, the manufacturer urged that it was not liable to the user because it was without knowledge of the use to which the machine was put, and, specifically, that a mentally retarded person might be employed to use it. It further alleged that it was the employer's duty to use care in the operation of the machine, and that its liability was secondary to that of the employer. Partial indemnification was sought. Obviously, the manufacturer was chargeable with all foreseeable uses of the product, and its liability cannot be passive. Active and passive care concepts have

no relevancy here. When tortfeasors are each chargeable with active or affirmative negligence, as is the case here, total indemnification is never permissible. (41 Am. Jur. 2d *Indemnity* sec. 21 (1968).) Under the theory of the majority, the third-party complaint could not be maintained.

In *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, the manufacturer, which sold a product without safety devices, sought indemnification from an employer for purchasing a product in this condition. Obviously, putting into commerce an article without safety devices is a violation of the manufacturer's nondelegable duty. (*Bexiga v. Havir Manufacturing Corp.* (1972), 60 N.J. 402, 290 A.2d 281.) It is a classical violation of the duty imposed by the strict liability teaching.

To arrive at its conclusion, the third-party complaints have been rewritten by the majority so as to state the theme of the opinions.

I am realistic enough to know that in every instance where an employee is injured, the manufacturer of a defective injury-causing product, to avoid liability or spread the risk, will charge the employer with multiple aspects of negligence. The negligence may be in failing to instruct the employee as to the use of the product or in not having an adequate number of persons engaged in the operation in which the product was employed. Again, it may be in not inspecting the product for defects, although such inspection is not required under the doctrine of strict liability. (Restatement (Second) of Torts sec. 402A, Comment *n* (1965); *Sweeney v. Max A.R. Matthews Co.* (1968), 94 Ill. App. 2d 6, 21, *aff'd* (1970), 46 Ill. 2d 64.) Or it may be in buying a machine which the manufacturer saw fit to sell without protective components as was the case in *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47. Yet this is but an example of putting into commerce an unreasonably dangerous product. The

aspects of negligence which the fertile mind of the skilled trial lawyer will conjure are countless.

It has been estimated that 85% of all products liability suits come from products employed in work-related situations. (Insurance Co. of North America, Products Liability: Some Professional Considerations, Booklet H H—8306—3 (1976), INA Corp., Philadelphia.) The manufacturer who puts in commerce an unreasonably dangerous injury-causing product and who, under this strict liability doctrine, was to bear the cost of injury, now has an escape hatch. He is the employer. This is the party who is to contribute or to indemnify. Indemnification, of course, means absorption of the entire loss. Yet how can transition to the employer of the manufacturer's liability be consistent with the compelling reasons for the teaching? I refer to imposition of liability on the profit-maker, distribution of the cost of injury among the public as a cost of doing business, and the incentive for safer products.

What about the Workmen's Compensation Act, which, in return for a guarantee of protection to the employee for work-related injuries, immunized the employer against common law actions? Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a).

Section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a)) provides:

> "(a) No common law or statutory right to recover damages from the employer [or] his insurer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***."

Larson (2A A. Larson, Workmen's Compensation sec. 76.21 (1976 & Supp. 1977) states: "The great majority of jurisdictions have held that the employer whose concurring negligence contributed to the employee's injury cannot be

sued or joined by the third party as a joint tortfeasor, whether under contribution statutes or at common law." This proposition is found in many jurisdictions. Alaska: *Golden Valley Electric Association, Inc. v. City Electric Service, Inc.* (Alaska 1974), 518 P.2d 65; Connecticut: *A.A. Equipment, Inc. v. Farmoil, Inc.* (Super. Ct. Hartford County 1974), 31 Conn. Supp. 322, 330 A.2d 99; Georgia: *Georgia Power Co. v. Diamond* (1973), 130 Ga. App. 268, 202 S.E.2d 704; Hawaii: *Kamali v. Hawaiian Electric Co.* (1972), 54 Hawaii 153, 504 P.2d 861; Iowa: *Iowa Power & Light Co. v. Abild Construction Co.* (1966), 259 Iowa 314, 144 N.W.2d 303; Louisiana: *LeJeune v. Highlands Insurance Co.* (La. App. 1973), 287 So. 2d 531, *aff'd* (1974), 290 So. 2d 903; Maryland: *Baltimore Transit Co. v. State* (1944), 183 Md. 674, 39 A.2d 858; Michigan: *Husted v. Consumers Power Co.* (1965), 376 Mich. 41, 135 N.W.2d 370; New Hampshire: *William H. Field Co. v. Nuroco Woodwork, Inc.* (1975), 115 N.H. 632, 348 A.2d 716; New Jersey: *Ruvolo v. United States Steel Corp.* (1975), 133 N.J. Super. 362, 336 A.2d 508; Nevada: *Outboard Marine Corp. v. Schupbach* (1977), 93 Nev. 158, 561 P.2d 450; North Carolina; *Hunsucker v. High Point Bending & Chair Co.* (1953), 237 N.C. 559, 75 S.E.2d 768; Ohio: *Bankers Indemnity Ins. Co. v. Cleveland Hardware & Forging Co.* (1945), 77 Ohio App. 121, 62 N.E.2d 180, *appeal dismissed* (1945), 145 Ohio St. 615, 62 N.E.2d 251; Rhode Island: *Cacchillo v. H. Leach Machinery Co.* (1973), 111 R.I. 593, 305 A.2d 541; South Dakota: *Kessler v. Bowie Machine Works, Inc.* (8th Cir. 1974), 501 F.2d 617 (applying South Dakota law); Tennessee: *Dawn v. Essex Conveyors, Inc.* (6th Cir. 1974), 498 F.2d 921 (applying Tennessee law); Washington: *Montoya v. Greenway Aluminum Co.* (1974), 10 Wash. App. 630, 519 P.2d 22; Wisconsin: *A. O. Smith Corp. v. Associated Sales & Bag Co.* (1962), 16 Wis. 2d 145, 113 N.W.2d 562.

It has been stated: "Products that don't work as they should, which now rival automobile accidents as the nation's No. 1 cause of litigation, were responsible for an estimated 500,000 court cases last year, compared with 100,000 five years ago, and many expect the annual total to reach 1,000,000 by 1985." Wall Street Journal, Nov. 3, 1972, at 1, col. 6.

Our workmen's compensation rates are now the highest in Illinois history. A claim for the death of a husband and father earning $20,000 annually, leaving a widow and four children under 16 years old, runs as high as $250,000 (Ill. Rev. Stat. 1975, ch. 48, par. 138.7).

It is common knowledge that the high cost of workmen's compensation insurance is driving industry out of this State. (*Chicago Daily News,* Feb. 25, 1977, at 5, col. 2; *Chicago Sun-Times,* Feb. 3, 1977, at 115, col. 2; June 11, 1977, at 47, col. 1; June 20, 1977, at 62, col. 1; *Chicago Tribune,* Feb. 26, 1977, sec. 2, at 7, col. 5; June 11, 1977, at 5, col. 4.) Under the majority concept, the workmen's compensation premium will be miniscule as compared to the cost of the employer's insurance for products coverage—if he can get it. On him will be dumped the manufacturer's liability. And all because a majority of this court believed that the manufacturer should be permitted to pass on his liability to another.

While the majority's position may appear to demonstrate "kitchen equity," it clashes with those precepts which govern our actions, those of inferior courts, and last, but certainly not least, those of the litigants. Legal principles are not mere hollow sounds. They create rights, define obligations, and determine the mechanics for the realization of such rights and obligations. Principles, it must never be forgotten, have a pragmatic effect on the law in action. The admissibility of all evidence is determined by principles, common law or statutory, which control the particular action. So also the fact-finder, be it court or

jury, is governed by principles in arriving at its conclusion.

The underlying concept of the majority is that equity and fairness dictate its conclusion. Apart from the fact that principles must control, one court, in denying the manufacturer of a defective product indemnity against the employer of injured employees, made these pithy observations:

> "It is argued that if indemnity is not allowed the result is manifestly inequitable since the jury found Outboard to be only twenty-five percent at fault while the employers each were found to be thirty-seven and one-half percent at fault. Consequently, as a matter of fairness, the employers should not be insulated completely. Although this contention has some appeal, it is one to be submitted to the legislature rather than to us. To date, the legislature has insulated the contributing employer and has voided indemnity absent an independent duty owing from the employer to the third party." (*Outboard Marine Corp. v. Schupbach*) (1977), 93 Nev. 158, 165, 561 P.2d 450, 454.

Many will undoubtedly urge that the contentions of the majority are for the legislature. I only know they are not for us. We must be governed by reason, not sentiment. We have no license to experiment with novel concepts because they might appeal to a personal sense of justice.

The distinction between contribution and indemnity is ignored by this trio, *Skinner, Stevens* and *Robinson.* In two of the cases, *Skinner* and *Stevens,* the third-party complaints are treated by this court as seeking contribution or "partial indemnity," whatever that is. In *Robinson,* the third-party complaint sought total indemnification.

Contribution is the distribution or the spreading of a loss between two or more persons who are jointly liable for having committed a tort against a third party. In

accordance with the general rule, one who is compelled to pay the whole or more than his just share of the loss, upon which several persons are liable, is entitled to contribution against the others from the payment of their respective shares. *Phillips-Jones Corp. v. Parmley* (1937), 302 U.S. 233, 82 L. Ed. 221, 58 S. Ct. 197; *Gottschalk v. Gottschalk* (1921), 222 Ill. App. 56; Restatement of Restitution sec. 81 (1937).

Indemnity, on the other hand, shifts the entire loss from one tortfeasor to another who, by express contract or by operation of law, is deemed responsible for making full payment. *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 603; see also *Karas v. Snell* (1957), 11 Ill. 2d 233, 248.

We have already noted how contribution and indemnity, two distinct concepts, are often confused. See *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 87; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 624; W. Prosser, Torts sec. 51, at 310 (4th ed. 1971).

The apparent effect of the majority is to abolish indemnity. "Total indemnification" (*Robinson*), "partial indemnification" (*Skinner* and *Stevens*) and "contribution" are all treated interchangeably.

Absent from the majority opinion is any definition of what constitutes contribution or "partial indemnity." Wanting also are guidelines for what the court holds. Standards will be impossible to formulate in the absence of some clear definition of the position of the majority other than the abolition of the rule of no contribution. An opinion so wide sweeping in character must offer something constructive. Opened up, but unresolved, are a series of important queries.

What is the status of the tortfeasor who had a right to *bona fide* indemnity, not contribution? Has this right been impaired? Has the active-passive criterion of implied

indemnity been abolished?

What is the effect of the holding upon the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*)? There are many areas of potential contribution there. To list a few: between owner, general contractor, subcontractor, architect and employer; between general contractor, subcontractor and employer; between owner and architect; and between general contractor and architect. The combination is almost endless.

What about the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 94 *et seq.*)? Can there be contribution between the dramshop keeper and the intoxicated person? Can there be contribution between the dramshop operator and the owner of the premises?

Suppose one tortfeasor enters into a settlement with the plaintiff. Is he entitled to recover contribution from other defendants whose liability remains vital, notwithstanding the settlement? Or what about the insurer who discharges the liability of its tortfeasor insured? Is it subrogated to a right of contribution?

What will be the vehicle of apportionment of damages between wrongdoers? Will it be by third-party action, by counterclaim between defendants, by independent actions, or by all such vehicles?

What is the basis of contribution? Will it be according to a payment of more than a *pro rata* share? Or will it be on the basis of "pure" contribution with the amount of fault being determined at 100%? The majority opinion has an ethereal mystique so that neither judges nor lawyers can know how to give it meaning.

When a court undertakes to announce a new doctrine which is a departure from the past not only in principle but in practice, it would seem it has the obligation to spell out in detail how this new teaching shall be put into practice. See *Hoffman v. Jones* (Fla. 1973), 280 So. 2d 431, and *Li v. Yellow Cab Co.* (1975), 13 Cal. 3d 804, 532

P.2d 1226, 119 Cal. Rptr. 858, where the Florida and California Supreme Courts, in adopting by judicial fiat comparative negligence, spelled out in detail how the doctrine shall be applied.

I predict that this trio, *Skinner, Stevens* and *Robinson,* will generate a proliferation of much meritless litigation. Every action against the manufacturer or retailer in strict liability in tort will mean another action whereby the manufacturer or retailer will seek "indemnity" or "contribution" against some third party outside the distributive chain, so that the manufacturer's responsibility may be taken over or at least shared.

Proliferation of such litigation is unwholesome. The trial of a lawsuit against the manufacturer in strict liability, with the manufacturer focusing on the negligence of the employer, will be complex. The manufacturer will use the employer's negligence as a defense to the original action— the objective of the third-party actions before us. More than that, such litigation will fill the halls of justice with obstacles, make litigation an even rarer luxury, and add additional trial days to a docket already struggling under a near fatal burden.

Like Jefferson, I believe "law and institutions must go hand in hand with the progress of the human mind." Like Jefferson, I do not believe in deviation from recognized principles for expediency. This is far too violent a wrench in the law.

The effect of the majority's opinion will be far reaching unless the General Assembly manifests greater wisdom than this court. A statute insulating the employer from all liability to the employee other than for workmen's compensation benefits, including third-party actions, is needed for the preservation of the employer. He should not be saddled with the responsibilities of the manufacturers.

For these reasons I would affirm the judgments of the

appellate courts in *Skinner v. Reed-Prentice Division Package Machinery Co., Stevens v. Silver Manufacturing Co.,* and *Robinson v. International Harvester Co.*